**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| GREGORY SMITH. <br><br>     Plaintiff. <br><br>     v. <br><br> DISTRICT OF COLUMBIA, *et al.* <br><br>     Defendants. | Civ. No. 1:15-cv-161 (ABJ) |

**PLAINTIFF'S STATEMENT OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR COSTS AND FEES**

Plaintiff Gregory Smith respectfully submits this Statement of Points and Authorities in support of his Motion for Costs and Fees.

## I. INTRODUCTION

Plaintiff seeks to recover costs and fees incurred as a result of a misrepresentation made by the District of Columbia ("District") about the existence of documents during the course of discovery. Specifically, in response to Plaintiff's repeated requests for the highly relevant data from the TMS system, which is the Department of Correction's electronic document management system, the District stated, "We have been advised *that the TMI (sic) information you requested does not exist*." Quite the contrary, *the TMS data did exist*. Plaintiff was only able to obtain some of the TMS data after taking the deposition of the District's corporate designee on the singular topic of the preservation and/or spoliation of the TMS data. Accordingly, Plaintiff is seeking to recover the costs and attorney's fees incurred to obtain the TMS data that the District misrepresented did not exist, including the cost and fees of taking the corporate deposition on the topic of the TMS data.

1

In addition, over the course of ten months, Plaintiff attempted to obtain "overdetention reports," which are essential to Plaintiff proving his claims. Indeed, Plaintiff deposed the District on the topic of the overdetention reports, and even requested that the District bring copies of all overdetention reports to the deposition. At the District's deposition, the corporate designee testified that she did not bring the overdetention reports with her to the deposition and that she performed no search to locate the overdetention reports. Remarkably, the corporate designee, Jeanette Myrick, then testified that she is the individual that authored the "overdetention reports" for "each incident of an overdetention," and that all of the reports were contained "in a folder on [her] computer." Ultimately, during the course of discovery, the District produced three vastly different iterations of the overdetention reports. It took ten months and substantial effort by the Plaintiff, however, to obtain the overdetention reports authored by Jeannette Myrick, which were stored on Ms. Myrick's own computer. Indeed, had Plaintiff not taken the Rule 30(b)(6) deposition on the overdetention reports, Plaintiff would have never learned of the existence of the highly relevant and discoverable overdetention reports contained on Ms. Myrick's computer. Instead, Plaintiff would have continued to proceed in the litigation relying upon the inaccurate data contained in the District's interrogatory responses. Accordingly, Plaintiff is seeking costs and fees incurred to obtain the overdetention reports.

## II. RELEVANT FACTS AND PROCEDURAL OVERVIEW

This case involves a twenty-three (23) day overdetention of Plaintiff Gregory Smith by the District of Columbia Department of Corrections ("Department of Corrections"). Am. Compl. at ¶ 1 [ECF No. 36]. Plaintiff was arrested on March 15, 2014 and lawfully detained until March 18, 2014 at the D.C. Jail. *Id*. at ¶¶ 16-17. On March 18, 2014, Judge Juliet McKenna of the D.C. Superior Court ordered Plaintiff to be released from custody. *Id*. at ¶ 17. Despite the Court's order on March 18, 2014, the Department of Corrections did not release Plaintiff until April 10,

2014 after a hearing before the Court where Judge McKenna again ordered the D.C. Jail to release Mr. Smith. *Id.* at ¶ 18.

On November 14, 2014, Plaintiff filed this action in the Superior Court of the District of Columbia asserting claims under the Fifth Amendment to the United States Constitution and 42 U.S.C. § 1983, and common law tort claims.

On February 2, 2015, the District removed this case to this Court under 28 U.S.C. § 1441(c). *See* E.C.F. No. 1

On March 10, 2015, the Court issued a scheduling order governing discovery in this action. *See* E.C.F. No. 13.

**A. Misrepresentations Regarding the Existence of TMS Data**

On December 14, 2015, the Plaintiff took the deposition of Department of Corrections employee, Jack Jones. During the deposition, Jack Jones testified that the Records Office uploads all documents received from the D.C. Superior Court, including release orders, through an electronic system called the TMS system. Jones Dep. 13:20-14-22 [Ex. 10]. Further, when a document, such as a release order, is uploaded into the TMS system, the TMS system indicates the time the document is uploaded. *Id.* at 31:18-32:1 [Ex. 10]. During the deposition, Plaintiff requested a copy of all the TMS data, in its native format. *Id.* at 56:12-18 [Ex. 10].

On January 4, 2016, Plaintiff requested in writing the production of the TMS data. Decl. of Klaproth at ¶ 2. Plaintiff's counsel wrote to the District in an email that:

> Finally, Mr. Jones testified (Dep. 31:18-32:1; see attached) that the TMS system indicates the time that a document is uploaded into the system. Can you please supplement the document production with screenshots of the TMS system indicating when the release orders (for cases 2014 CMD 452 and 2012 CMD 7806) were uploaded for Gregory Smith into the TMS system. In the alternative, we would like to inspect the TMS system as it relates to the two cases for Gregory Smith.

Plaintiff Email to District (January 4, 2016) [Ex. 2].

3

On January 12, 2016, counsel for Plaintiff again corresponded with the District requesting the production of TMS data. *See* Plaintiff Email to District (January 12, 2016) [Ex. 3].

On January 29, 2016, the District stated in the Joint Status Report that it "anticipates full compliance with the requested discovery," seeking the TMS data within two weeks. Jt. Status. Rep. at ¶¶ 2-3 (January 29, 2016) [E.C.F. No. 27].

On February 12, 2016, counsel for Plaintiff once again sent an email to the District requesting the TMS data. *See* Plaintiff Email to District (February 12, 2016) [Ex. 4].

On February 12, 2016, on the close of discovery, the District stated in an email, "***We have been advised that the TMI [sic] information you requested does not exist***." District Email to Plaintiff (February 12, 2016) (emphasis added) [Ex. 1]. Plaintiff immediately called the Court to obtain a two-week extension of discovery, which the Court granted. Minute Order (February 12, 2016).

On February 16, 2016, Plaintiff noticed a deposition pursuant to Fed. R. Civ. P. 30(b)(6) in relation to the retention and preservation of the TMS data to be taken on February 24, 2016. Decl. of Klaproth at ¶ 6; *see also* 30(b)(6) Deposition Notice Regarding TMS Data [Ex. 5]. The deposition was subsequently rescheduled for March 4, 2016. *Id.*  At the deposition, the corporate designee for the District of Columbia produced for the first time TMS data that the District previously represented did not exist. Decl. of Klaproth at ¶ 7. The designee did not, however, perform any search to locate documents related to the TMS data in case no. 2012 CMD 7806, or produce those documents.  Myrick Dep. II relating to TMS Data at 8:20-10:14 (testifying that in relation to case no. 2012 CMD 7806 "I did not look for those documents.") [Ex. 12].

### B.  Failure to Produce Overdetention Reports

On March 27, 2015, Plaintiff served his First Set of Requests for the Production of Documents on Defendant District of Columbia. Decl. of Klaproth at ¶ 8.  In Request No. 9, Plaintiff

4

requested "all reports prepared by the District of Columbia relating to overdetention of inmates at the D.C. Jail between March 1, 2007 and April 10, 2014." *Id.*

Over five months later, on September 1, 2015, the District provided the following response to Request No. 9: "See District's response to Interrogatory No. 2 identifying the numerical data for the period March 2009 through April 2014." *See* District's Responses to Plaintiff's Requests for Production of Documents and Interrogatories [Ex. 6]. In response to Interrogatory No. 2, the District provided a table purporting to identify the number of overdetentions occurring by month between March 2009 through April 2014. *Id.* [Ex. 6].

On September 25, 2015, Plaintiff served his Second Set of Requests for the Production of Documents and noticed the deposition of a corporate designee pursuant to Fed. R. Civ. P. 30(b)(6). Specifically, Request No. 18 requested, "[a]ll release discrepancy reports from March 2009 through April 2014." *See* Response to Plaintiff's Second Set of Requests for Production of Documents [Ex. 8]. In addition, Topic 10 of the Rule 30(b)(6) deposition notice identified the following topic:

> 10. Prisoner overdetention at the DC Jail between March 18, 2009 and April 10, 2014.
>
>   a) All sources of information relied upon in answering Plaintiff's Interrogatory No. 2.
>
>   b) The definition of "overdetention" used in responding to Plaintiff's Interrogatory No. 2
>
>   c) All policies to decrease the instances overdetention of prisoners between March 18, 2009 and April 10, 2014.
>
>   d) All policies to prevent the overdetention of prisoners in place on March, 2014.
>
>   e) All reports and/or written statements made by the Department of Corrections relating.

5

*See* Rule 30(b)(6) Deposition Notice (November 23, 2015) [Ex. 9]. In addition, the deposition notice directed the designee to bring "[a]ll reports published by the Department of Corrections relating to prisoner overdetention between March 18, 2009 and April 10, 2014." *Id.* at 6 [Ex. 9].

On October 7, 2015, Plaintiff notified the District in writing that its discovery response with respect to the overdetention reports was deficient. Specifically, Plaintiff wrote:

> Request No. 9: This request seeks all reports prepared by the District of Columbia relating to the over-detention of inmates at the D.C. Jail between March 1, 2007 and April 10, 2014. According to Defendant District of Columbia's response to Request No. 13, the District of Columbia generates a monthly report regarding the over-detention of inmates. Despite the acknowledgement of the existence of the monthly reports, and it being directly responsive to Request No. 9, the monthly reports have not been produced. Please provide any and all copies of reports forthwith which would be responsive to Plaintiff's Request for Production of Documents number 9.

Plaintiff Letter to District (October 7, 2015) [Ex. 7].

On October 26, 2015, Plaintiff's counsel met and conferred with the counsel for the District, in part, with respect to the District's failure to produce the overdetention reports. Decl. of Klaproth at ¶ 12. Counsel for the District stated that a supplemental production would be forthcoming on October 30, 2015. *Id.* On November 4, 2015, counsel for the District indicated, "we have reached out to our client regarding the issues discussed during the meet and confer…we will let you know as soon as we have this information." *Id.* at ¶ 13.

On November 22, 2015, on the eve of the deposition for the District's corporate representative, the District responded to Plaintiff's Request No. 18 for the production of "all release discrepancy reports from March 2009 through April 2014," by stating over objections, "a table listing each case of over-detention in chronological order from October 1, 2011, through October 29, 2013, is available on the Council of the District of Columbia's website for Judiciary and Public Safety hearings at page 23 and 24 of the document found at

6

http://dccouncil.us/files/performance_oversight/DOCperformanceanswer2014.pdf." *See* District's Response to Request No. 18 [Ex. 8]; Decl. of Klaproth at ¶ 14.

At the deposition for the corporate designee, Jeanette Myrick, Ms. Myrick testified that she did not bring any documents responsive to the deposition notice that requested, "[a]ll reports published by the Department of Corrections relating to prisoner overdetention between March 18, 2009 and April 10, 2014." Myrick Dep. I (regarding overdetention reports) at 16:16-22 [Ex. 11]. The corporate designee further stated that she did not even search for those documents. *Id.* Specifically, the corporate designee testified:

> Q  On page 6 of DC 1, number 12, it states, "All reports published by the Department of Corrections relating to prisoner overdetention between March 18, 2009, and April 10, 2014." Do you have any documents with you today that are responsive to that request?
> A No.
> Q And did you perform a search to locate any documents --
> A No.
> Q -- responsive to that request?
> A No.

Myrick Dep. I at 16:16-17:5 [Ex. 11]. Although the corporate designee did not bring responsive documents or search for responsive documents she testified that those documents do in fact exist. Myrick Dep. I 17:6-18:14 [Ex. 11]. She knew this because she authored the overdetention reports. *Id.* Specifically, the corporate designee testified:

> Q And do you know if the Department of Corrections has any or has published any reports relating to prisoner overdetention between March 18, 2009, and April 10, 2014?
> ….
> A Yes, I believe so.
> Q And what are those reports?
> A They would be overdetention reports.
> Q And who prepares those overdetention reports?
> A I do.
> Q Oh, you do?
> A Yes.
> Q And how do you prepare them, on a computer, hand?

>A On a computer.
>Q How often do you prepare the reports?
>A Each incident, if there's an incident, you know, if there's an overdetention.
>   ….
>Q Each incident of an overdetention, you would prepare a report; is that correct?
>A That's correct, yes.
>Q Where do you store those reports?
>A Where do I store them? In a folder on my computer.

Myrick Dep. I at 17:6-18:14 [Ex. 11].

On December 6, 2015, Plaintiff propounded his Third Set of Requests for the Production of Documents requesting the overdetention reports contained on Ms. Myrick's computer. Decl. of Klaproth at ¶ 15. On January 12, 2015, Plaintiff again requested the overdetention reports "in the possession or control of Jeanette Myrick." *See* Plaintiff Email to District (January 12, 2016) [Ex. 3].

On January 27, 2016, the District produced the overdetention reports purportedly contained on Jeanette Myrick's computer. Decl. of Klaproth at ¶ 16. The data in this set of overdetention reports varied significantly from the first two iterations of overdetention reports provided by the District. *Id.*

### III. ARGUMENT

**A. The District's Misrepresentation Regarding the Existence of TMS Data Is a Violation of Fed. R. Civ. P. 37(c)**

**1.     The District Falsely Stated that the TMS Data Did Not Exist**

Under Fed. R. Civ. P. 37(c)(1), "If a party fails to provide information…as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." The sanction of exclusion is "automatic and mandatory unless the party to be sanctioned can show that its violation . . . was either [substantially] justified or harmless." *Elion*

8

*v. Jackson*, 544 F. Supp. 2d 1, 6 (D.D.C. 2008). "The burden is on the party facing sanctions to prove that its violation was either substantially justified or harmless." *Id.*

Fed. R. Civ. P. 37(c)(1) also permits a court "'[i]n addition to or lieu of this [exclusion] sanction…to impose other appropriate sanctions,' which include 'payment of reasonable expenses, including attorney's fees, caused by the failure,' informing the jury of the party's failure and 'any of the orders listed in Rule 37(b)(2)(A)(i)-(vi).'" *Walls v. Paulson,* 250 F.R.D. 48, 54 (D.D.C. 2008) (citing to Fed. R. Civ. P. 37(c)(1)(A)-(C)).

Here, the District violated Fed. R. Civ. P. 37(c)(1) by misrepresenting the existence of TMS data. Specifically, Jack Jones testified that the Department of Corrections uploads all release orders it receives from the D.C. Superior Court into an electronic system called the TMS System. *See* Jones Dep. 13:20-14-22 [Ex. 10]. Further, when a document, such as a release order, is uploaded into the TMS System, it indicates the time it is uploaded. *Id.* at 31:18-32:1. This case involves the District's failure to release the Plaintiff, Gregory Smith, from the D.C. Jail for twenty-three (23) days after he was ordered to be released by the D.C. Superior Court. Given that the District's only purported defense in this matter is the claim that it did not receive the release order relating to Mr. Smith, the District was required to disclose all information relating to the TMS system under Fed. R. Civ. P. 26(a)(1). It failed to do so.

More disconcerting, however, is that even after the Plaintiff learned of the existence of the TMS system through the deposition of Jack Jones, the District still refused to disclose the TMS information. Indeed, at 4:35 p.m. on the day of the close of discovery, the District stated "***We have been advised that the TMI [sic] information you requested does not exist***." District Email to Plaintiff (February 12, 2016) (emphasis added) [Ex. 1]. As the Court may recall, Plaintiff immediately called the Court to obtain a two-week extension of discovery, which the

9

Court granted. Minute Order (February 12, 2016). The Plaintiff then noticed a deposition under Fed. R. Civ. P. 30(b)(6) in relation to the preservation and/or spoliation of the TMS data. *See* 30(b)(6) Deposition Notice Regarding TMS Data [Ex. 5]. At the deposition, and in complete contradiction of the representation that the "TM[S] information….[did] not exist," the corporate designee produced some documents purporting to be TMS Data. The false representation regarding the existence of the TMS data is a violation of Fed. R. Civ. P. (c)(1).

> 2. **The District Failed to Bring <u>All</u> TMS Data to its Deposition in Violation of Rule 37(d)**

Nevertheless, the corporate designee still did not prepare for the deposition or bring with her the TMS data relating to the case 2012 CMD 7806—the case in which Mr. Smith was overdetained for twenty-three (23) days. Indeed, corporate designee, Ms. Myrick testified that she did not even look for responsive documents in connection with case no. 2012 CMD 7806:

> Q. And number one is data and/or information in the TMS system, as it relates to Gregory Smith, for cases 2014 CMD 452 and 2012 CMD 7806, do you see that?
> A. I see that, yes.
> Q. And did you review documents in response to that request?
> A. Not totally, and only one document.
> Q. And what was that one document?
> A. That was the case 2014 CMD 45 -- whatever the other -- it should be six digits there, but 452.
> Q. Okay. So you only reviewed documents for that case?
> A. Uh-huh.
> Q. Is that correct?
> A. Yes.
> Q. Why did you not review documents for Case 2012 CMD 7806?
> A. I had no reason to.
> Q. Why is that?
> A. I just didn't. Other than that, I had no reason -- I had no documents pertaining to that case to review for today.
> Q. So just to clarify your testimony, when you state you have no reason to review those documents, is it because there are no documents as it relates to that, or is it because you did not look for those documents?
> A. I did not look for those documents.
> Q. And you reviewed this document, Exhibit 1, in advance of today's deposition, is that correct?
> A. Yes, this document, Exhibit 1, yes.

10

> Q. Okay. And although page three, it requests data and/or information in TMS system as it relates to Gregory Smith in 2012 CMD 7806, you did not review or search for any documents in response to that request, is that correct?
> A. You said today?
> Q. In advance of today, to prepare for today's deposition?
> A. No, I'm going to say no still.

Myrick Dep. II relating to TMS Data at 8:20-10:14 [Ex. 12]. The District's failure to properly prepare its corporate designee under Fed. R. Civ. P. 30(b)(6) and to bring the TMS data connection with case no. 2012 CMD 7806 to her deposition also warrants the imposition of sanctions. *Compare Covad Communs. Co. v. Revonet, Inc.,* 267 F.R.D. 14, 24 (D.D.C. 2010) ("a corporate party's failure to educate its 30(b)(6) witness with respect to the corporation's full knowledge of topics noticed for the deposition is effectively a failure 'to appear for the purposes of Rule 37(d).'"); *with* Fed. R. Civ. P. 37(d)(1) ("the court…may, on motion, order sanctions if:(i) a party or a party's officer, director, or managing agent—or a person designated under Rule 30(b)(6) or 31(a)(4)—fails, after being served with proper notice, to appear for that person's deposition."). Indeed, "[m]onetary sanctions are mandatory under Rule 37(d) for failure to appear by means of wholly failing to educate a Rule 30(b)(6) witness," *In re Vitamins Antitrust Litig.,* 216 F.R.D. 168, 174 (D.D.C. 2003); *see also* Fed. R. Civ. P. 37(d)(3) ("the court must require the party failing to act, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust.").

If Plaintiff had relied upon the inaccurate statement by the District that the TMS data did not exist, he would have never obtained any TMS data. Nevertheless, Plaintiff diligently challenged the District's claims that the TMS data did not exist by taking a deposition to unearth the District's retention policies in connection with the TMS data. It was at this deposition that the Plaintiff learned that not only did the TMS data exist, but that it had also been concealed by the

11

District. Even at the deposition, however, the witness was still unprepared by failing to produce any TMS documents relating to case no. 2012 CMD 7806, and failing to even search for those documents prior to the deposition.

Plaintiff has incurred substantial expense and time trying to obtain the TMS data in the possession of the District. Even despite Plaintiff's efforts, he has still not obtained all the TMS data simply because the District's corporate designee performed no search for all the data prior to her deposition. Accordingly, under Rules 37(c)-(d) and pursuant to the Court's inherent power to sanction, Plaintiff respectfully requests the court to: (1) preclude the District from using any information relating to the TMS data on motion, at a hearing, or at a trial; (2) order payment of the reasonable expenses, including attorney's fees to Plaintiff; and (3) inform the jury of the District's failure to accurately state the existence of the TMS data and to disclose the TMS data in connection with 2012 CMD 7806.

**B. The District Failed to Produce the Overdetention Reports in a Timely Manner in Violation of Fed. R. Civ. P. 37(c),(d)**

    **1.    The District Failed to Produce Overdetention Reports at its Deposition in Violation of Rule 37(d)**

Plaintiff requested the District to produce all overdetention reports on March 27, 2015. Decl. of Klaproth at ¶ 8. In response, over five (5) months later, the District produced a table in an interrogatory response purporting to indicate the number of overdetentions occurring between March 2009 and April 2014. *See* District's Responses to Plaintiff's Requests for Production of Documents and Interrogatories at Response to Request No. 9 and Interrogatory No. 2. [Ex. 6]. Plaintiff made repeated efforts to obtain the actual overdetention reports, rather than a table. Decl. of Klaproth at ¶¶ 11-13; *see also* Letter to District (October 27, 2015) [Ex. 7]. It was not until the eve of the District's Rule 30(b)(6) deposition, that the District supplemented its discovery responses relating to overdetention reports by directing Plaintiff to the D.C. Council's

website which purportedly contained data relating to overdetentions. Decl. of Klaproth at ¶ 14; *see also* District's response to Request No. 18 [Ex. 8]. The data on this website varied significantly from the data contained in the District's prior Answers to Interrogatory No. 2. *See* Decl. of Klaproth at ¶ 16. In other words, either the District's response to Interrogatory No. 2 was false or the report contained on the D.C. Council's website was false.

Nevertheless, at the deposition of Jeanette Myrick, the District's corporate designee, she testified that she did not bring any documents responsive to the deposition notice that requested, "[a]ll reports published by the Department of Corrections relating to prisoner overdetention between March 18, 2009 and April 10, 2014." Myrick Dep. I 16:16-22 [Ex. 11]. Ms. Myrick also testified that she did not perform any search for documents responsive to this request. *Id.* at 16:16-17:5. Contrary to the District's previous representations of the documents comprising the "overdetention reports," Ms. Myrick testified the actual "overdetention reports" are contained on a folder on her computer. *Id.* at 17:6-18:14. Ms. Myrick knows this, because she authored the actual "overdetention reports." Ms. Myrick did not, however, bring the overdetention reports contained on her computer to the deposition or prepare to testify regarding those overdetention reports. Indeed, had Plaintiff not deposed Ms. Myrick, he never would have learned of the highly relevant overdetention reports contained on Ms. Myrick's computer, despite his repeated prior requests for those documents. As discussed above, the District's failure to prepare its 30(b)(6) witness with respect to the overdetention reports mandates an award of reasonable costs and attorney's fees under Fed. R. Civ. P 37(d)(1). *See In re Vitamins Antitrust Litig.,* 216 F.R.D. 168, 175 (D.D.C. 2003); *see also* Fed. R. Civ. P. 37(d)(1).

### 2. The District Failed to Disclose the Overdetention Reports in a Timely Manner and Failed to Supplement its Discovery in Violation of Rule 37(c)(1)

Notably, Ms. Myrick signed the interrogatory responses under oath, which contained overdetention data that directly contradicted the "overdetention reports" she authored and were contained on her computer. The District's failure to supplement its response to Interrogatory No. 2, which is now contradicted by two sets of overdetention reports that were subsequently produced, constitutes a violation of Fed. R. Civ. 37(c)(1). *See* Fed. R. Civ. P. 37(c) (it is a violation of Rule 37 for failing to supplement information under Rule 26(e)); *see also* Fed. R. Civ. P. 26(e)("A party who…has responded to an interrogatory….must supplement or correct its disclosure or response: (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing.").

Moreover, the District cannot claim it acted in good faith when it failed to disclose the overdetention reports, because Jeanette Myrick, the District's 30(b)(6) witness and representative signing the interrogatory responses, was recognized by the District in prior litigation as having "extensive experience" tracking overdetentions. *See Barnes v. District of Columbia*, 924 F. Supp. 2d 74, 84, n.3 (D.D.C. 2013) (noting Ms. Myrick's "extensive experience" in "tracking overdetentions" in relation to a class action lawsuit for overdetentions at the D.C. Jail). Given the District's recognition of Ms. Myrick's expertise in "tracking overdetentions," there is simply no good faith basis for the District's failure to disclose the overdetention reports contained on Ms. Myrick's computer for the ten months Plaintiff repeatedly requested the reports.

Similar to the District's failure to produce the TMS Data, obtaining the overdetention reports took persistent, costly efforts by the Plaintiff. Indeed, Plaintiff was deprived of the

ability to question the District on the overdetention reports during the Rule 30(b)(6) deposition simply because the witness was not prepared and the reports had not been produced. Instead, Plaintiff expended significant resources over a period of ten months obtaining the overdetention reports, which should have disclosed as part of the District initial disclosures under Rule 26(a)(1).

Accordingly, under Rules 37(c)-(d) and pursuant to the Court's inherent power to sanction, Plaintiff respectfully requests the court to: (1) order payment of the reasonable expenses, including attorney's fees to Plaintiff; and (2) inform the jury of the District's failure to disclose accurate overdetention reports in a timely manner.

### C. Attorney's Fees and Costs

As a result of the discovery violations discussed above, Plaintiff has incurred the following costs and fees:

| ATTORNEY | FEES | COSTS |
|---|---|---|
| Brendan Klaproth[1] | $ 13,722.80 | $ 454.93 |
| David Akulian[2] | $  5,882.90 | |
| Total | $ 19,605.70 | $ 454.93 |

### IV. CONCLUSION

Due to the District's misrepresentation regarding the existence of the TMS data, Plaintiff was only able to learn of the existence of the TMS data through significant expense and time of taking a corporate deposition. Similarly, the District's failure to produce accurate overdetention reports over a 10-month period caused the Plaintiff to incur significant costs and expenses. In particular, Plaintiff took the deposition of a corporate designee based on two different sets of overdetention reports, only to learn that the actual overdetention reports were contained on a

---

[1]     Decl. of Klaproth at ¶¶ 17-20.
[2]     Decl. of Akulian at ¶¶ 2-3.

folder on the witness' computer.  Thus, Plaintiff respectfully requests the Court to grant Plaintiff's Motion for Costs and Fees.


Dated:	May 11, 2016		Respectfully submitted,

			  /s/ Brendan Klaproth
			Brendan Klaproth (D.C. Bar No. 999360)
			Klaproth Law PLLC
			406 5th Street NW, Suite 350
			Washington, DC 20006
			Telephone: 202-618-2344
			Email: Bklaproth@klaprothlaw.com

			David Akulian (D.C. Bar No. 1005750)
			406 5th St. NW #201
			Washington, D.C. 20001
			Tel:    888-847-9859
			Email: info@notguiltyindc.gov
			*Attorneys for Plaintiff*