UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GREGORY SMITH,<br><br>             Plaintiff,<br><br>     v.<br><br>DISTRICT OF COLUMBIA, et al.,<br><br>             Defendants. | Civil Action No. 15-161<br>ABJ/DAR |

## MEMORANDUM OPINION

Plaintiff, Gregory Smith, brought this civil rights action in the Superior Court of the District of Columbia alleging that the District of Columbia Department of Corrections ("DOC") unlawfully detained him for 23 days after he was ordered to be released from custody. Amended Complaint (ECF No. 36) at 1. Defendants subsequently removed the case to this court. Notice of Removal (ECF No. 1). Plaintiff dismissed the DOC as a defendant on February 27, 2015, leaving the District of Columbia ("the District"), and DOC employees Jack Jones and Jeanette Myrick as the remaining defendants. This case was referred to the undersigned for determination of Plaintiff's Motion for Costs and Fees (ECF No. 39), wherein Plaintiff alleges various discovery violations by the District and seeks sanctions pursuant to Federal Rule of Civil Procedure 37. *See* Plaintiff's Statement of Points and Authorities in Support of Plaintiff's Motion for Costs and Fees ("Plaintiff's P&A") (ECF No. 39-1).

## BACKGROUND

The Court (Jackson, J.), entered a scheduling order on March 10, 2015, establishing the deadlines governing the course of discovery in this proceeding. *See* Scheduling Order (ECF No. 13). During the discovery period, Plaintiff sought, *inter alia*, two main types of materials

pertaining to the instant motion: data from the District's electronic transaction management system ("TMS"), and "over-detention reports" compiled by the DOC.  Plaintiff's P&A at 1–2.[1]

*Over-Detention Reports*

Plaintiff served Defendants with his first request for production of documents on March 27, 2015.  Plaintiff's P&A at 4.  In that request, Plaintiff sought "all reports prepared by the District of Columbia relating to overdetention of inmates at the D.C. Jail between March 1, 2007 and April 10, 2014."  *Id.* at 5.  The District responded to this request on September 1, 2015, pointing Plaintiff toward its prior response to Plaintiff's Interrogatory No. 2, which had provided a table listing the number of over-detentions by month.  *Id.*; Exhibit 6, District's Responses to Plaintiff's Request for Production of Documents and Interrogatories (ECF No. 39-7).  On September 25, 2015, Plaintiff served a second request for the production of documents, slightly rephrasing his request for "[a]ll release discrepancy reports from March 2009 through April 2014."  Exhibit 8, Response to Plaintiff's Second Set of Requests for Production of Documents (ECF No. 39-9) at 2.  Plaintiff followed up on October 7, 2015, noting that Plaintiff was seeking "all reports prepared by the District of Columbia relating to the over-detention of inmates," and that "[d]espite the acknowledgement of the existence of the monthly reports . . . the monthly reports have not been produced."  Exhibit 7, Plaintiff Letter to District of Columbia (ECF No. 39-8) at 1.  In response, the District directed Plaintiff to a website for the District of Columbia's Judiciary and Public Safety on November 22, 2015.  Exhibit 8 at 2.

Plaintiff subsequently noticed a deposition pursuant to Federal Rule of Civil Procedure 30(b)(6) outlining, *inter alia*, the following topics:

---

[1] The term "over-detention reports" refers to reports authored by DOC personnel following "each incident of an overdetention[.]"  *See* Exhibit 11, Jeanette Myrick Deposition I (Relating to Overdetention Reports) (ECF No. 39-12) at 5.

      10.    Prisoner overdetention at the DC Jail between March 18, 2009 and April 10, 2014.
- a) All sources of information relied upon in answering Plaintiff's Interrogatory No. 2.
- b) The definition of "overdetention" used in responding to Plaintiff's Interrogatory No. 2.
- c) All policies to decrease the instances overdetention of prisoners between March 18, 2009 and April 10, 2014.
- d) All policies to prevent the overdetention of prisoners in place on March 2014.
- e) All reports and/or written statements made by the Department of Corrections relating to prisoner overdetention between March 18, 2009 and April 10, 2014.

Rule 30(b)(6) Deposition Notice (ECF No. 39-10) at 4–5.  In addition to noticing those topics, Plaintiff requested that the deponent designated by the District provide "[a]ll reports published by the Department of Corrections relating to prisoner overdetention between March 18, 2009 and April 10, 2014."  The 30(b)(6) deposition was held on November 23, 2015, and the District's designee, Defendant Jeanette Myrick, appeared and testified as to the over-detention reports, but did not bring the requested documents with her to the deposition.  Exhibit 11, Jeanette Myrick Deposition I (Relating to Overdetention Reports) (ECF No. 39-12) at 2–3.  Ms. Myrick testified that she authors over-detention reports and keeps electronic versions of said reports in a folder on her computer.  *Id.* at 4.

On December 6, 2015, Plaintiff submitted to the District his third request for documents, specifically identifying the reports contained on Ms. Myrick's computer.  Plaintiff's P&A at 8.  On January 27, 2016, the District produced said reports.  *Id.*

### *TMS Data*

Plaintiff first learned of the existence of the TMS data during the December 14, 2015 deposition of Defendant Jack Jones, an employee of the DOC.  Plaintiff's P&A at 3.  Mr. Jones testified that when the Records Office receives documents such as release orders from the D.C.

Superior Court, such documents are uploaded into the TMS system. *Id.* The TMS system also indicates the time at which such documents are uploaded. *Id.* Plaintiff made his first request for the TMS data during the deposition. *Id.* Plaintiff followed up his initial request for the TMS data with an email request to the District on January 4, 2016. Exhibit 2, Plaintiff Email to District of Columbia (ECF No. 39-3) at 1. In this email, Plaintiff requested "screenshots of the TMS system indicating when the release orders (for cases 2014 CMD 452 and 2012 CMD 7806) were uploaded for [Plaintiff] into the TMS system." *Id.* Alternatively, Plaintiff requested access to inspect the TMS system with regard to the cases pertaining to each of Plaintiff's releases. *Id.*

On January 29, 2016, the parties filed a Joint Status Report with the Court, wherein the District stated that it "anticipates . . . full compliance with the requested discovery [of TMS data] in two (2) weeks." Joint Status Report (ECF No. 27) at 2. The Joint Status Report also requested an extension of fact discovery until February 12, 2016. *Id.* at 2. On the final day of the fact discovery period, the District sent Plaintiff an email stating "[w]e have been advised that the TMI [sic] information you requested does not exist." Exhibit 1, District Email to Plaintiff (ECF No. 39-2) at 1. The parties held a teleconference that same day, after which the Court (Jackson, J.) extended fact discovery until February 26, 2016. 01/12/2016 Minute Order.

Plaintiff noticed a second deposition pursuant to Rule 30(b)(6) in relation to the retention and preservation of the TMS data. Exhibit 5, Deposition Notice Regarding TMS Data (ECF No. 39-6). This notice included, *inter alia*, the following topics: "[t]he existence of data and/or information in the TMS system as it related to [Plaintiff] (for cases 2014 CMD 452 and 2012 CMD 7806)"; "[t]he retention policy for data contained in the TMS system during March and April 2014"; "[t]he search performed by DOC to obtain data and/or information from the TMS system as it relates to [Plaintiff] (for cases 2014 CMD 452 and 2012 CMD 7806)"; and "[t]he

existence of backup data from the TMS system." *Id.* at 2. On March 4, 2016, the day of the deposition, the District provided Plaintiff with TMS data pertaining to 2014 CMD 452, but not 2012 CMD 7806. Plaintiff's P&A at 4. Fact discovery subsequently closed on March 11, 2016.

**CONTENTIONS OF THE PARTIES**

*Rule 37(c)(1) Violations*

Plaintiff argues that the District violated Federal Rule of Civil Procedure 26(a)(1) when it failed to initially disclose the TMS data, *id.* at 9, and the over-detention reports, *id.* at 15. According to Plaintiff, "the District's only purported defense in this matter is the claim that it did not receive the release order relating to [Plaintiff]," and therefore "the District was required to disclose all information relating to the TMS system under Fed. R. Civ. P. 26(a)(1)." *Id.* at 9. Additionally, Plaintiff alleges that the District went further than simply failing to disclose the TMS data—it made a "false representation" regarding its existence. *Id.*

Plaintiff also argues that the District violated Rule 28(e) when it failed to supplement its response to Interrogatory No. 2 with the actual over-detention reports that were eventually produced in January 2016. *See id.* at 14. Plaintiff notes that Defendant Myrick answered Interrogatory No. 2 with a table containing the number of over-detentions, which was "data that directly contradicted the 'overdetention reports' she authored and [which] were contained on her computer." *See id.* at 12, 14; District's Responses to Plaintiff's Request for Production of Documents and Interrogatories, Exhibit 6, at 5–8. Plaintiff points out that Ms. Myrick was both the author of the actual reports, and the person who "signed the interrogatory responses under oath." *Id.* at 14. As such, there is "no good faith basis for the District's failure to disclose the overdetention reports contained on Ms. Myrick's computer for the ten months Plaintiff repeatedly requested the reports." *Id.* Plaintiff argues that these failures to disclose under Rule

26(a)(1) and failures to supplement under Rule 28(e) amount to violations of Rule 37(c)(1) and therefore require that sanctions be levied against the District.

The District argues that sanctions under Rule 37(c)(1) are inappropriate because Plaintiff "has not shown that the District violated any discovery rule under Rule 26(a) or 26(e)." Defendant District of Columbia's Memorandum of Points and Authorities in Opposition to Plaintiff's Motion for Costs and Fees ("Defendant's Opposition") (ECF No. 40) at 6. Because the District eventually provided all the requested material to Plaintiff, there is no cause for the Court to order sanctions. *See id.*

### *Rule 37(d) Violations*

In addition to sanctions for the alleged violations of Rule 37(c) for failure to disclose or supplement, Plaintiff also seeks sanctions based on the District's purported violation of Rule 37(d) for "failure to prepare its 30(b)(6) witness" with regard to both the over-detention reports, Plaintiff's P&A at 13, and the TMS data, *id.* at 4; Plaintiff's Reply Brief in Support of Plaintiff's Motion for Costs and Fees ("Plaintiff's Reply") (ECF No. 41) at 6–7. Plaintiff argues that Ms. Myrick was unprepared for both Rule 30(b)(6) depositions because: (1) Ms. Myrick "did not bring any documents responsive to the deposition notice," nor did she "perform any search for documents responsive to this request"; Plaintiff's P&A at 13, and (2) Ms. Myrick "did not produce, or even search for any documents relating to the deposition on TMS system data as it related to case no. 2012 CMD 7806"; Plaintiff's Reply at 6.

The District contends that Rule 37(d) sanctions are not appropriate in this case because "the District's 30(b)(6) witnesses appeared at deposition, and Ms. Myrick appeared twice." Defendant's Opposition at 8. Therefore, since the designated witness was present for the 30(b)(6) deposition, there is no underlying violation sufficient to warrant Rule 37(d) sanction.

*Scope of Sanctions*

Based on these allegations, Plaintiff contends that he is entitled to sanctions against the District in three forms: (1) costs and fees related to the additional discovery and Plaintiff's bringing of the instant motion, (2) an order precluding Defendants from using the TMS data in a motion, hearing, or at trial, and (3) an order informing the jury that the District failed to disclose the TMS data and over-detention reports in a timely manner. *See* Proposed Order (ECF No. 39-16) at 1.

The District, while still denying that Plaintiff is entitled to any sanction, takes particular issue with Plaintiff's request for attorneys' fees. Defendant's Opposition at 9–15. The District argues that if Plaintiff is to be awarded any attorneys' fees, the rates should be determined by the United States Attorney Office ("USAO") *Laffey* Matrix rather than Plaintiff's Legal Services Index ("LSI") *Laffey* rates. *Id.* at 12–13. Additionally, the District contends that any fee award should be reduced due to inaccurate entries in the records that Plaintiff's counsel has provided. *Id.* at 14–15.

Plaintiff replies that the LSI-*Laffey* Matrix is a "better measure of the change in prices for legal services in Washington D.C." than the USAO *Laffey* Matrix. Plaintiff's Reply at 12. Plaintiff also explained that any inaccuracies in counsel's records was a result of typographical error. *Id.* at 11.

**APPLICABLE STANDARDS**

Federal Rule of Civil Procedure 37(c)(1) states:

> (1) Failure to Disclose or Supplement. If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:

> (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure;
>
> (B) may inform the jury of the party's failure; and
>
> (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi).

Fed. R. Civ. P. 37(c)(1). "Rule 37(c)(1) is a self-executing sanction, and the motive or reason for the failure is irrelevant. It therefore is unnecessary to decide whether the [Defendant] acted in bad faith . . . or was simply sloppy in its search for relevant documents and in assisting its litigation counsel in responding to interrogatories." *Norden v. Samper*, 544 F. Supp. 2d 43, 49–50 (D.D.C. 2008) (quoting *Elion v. Jackson*, No. 05-0992, 2006 WL 2583694, at *1 (D.D.C. Sept. 8, 2006)). Additionally, "[t]he burden of showing substantial justification and special circumstances is on the party being sanctioned." *Banks v. Vilsack*, 292 F.R.D. 158, 160 (D.D.C. 2013) (citation omitted). Before the sanctioned party is required to provide such justification, however, "the initial burden is on the movant to show that the [evidence] was undisclosed." *Romero v. ITW Food Equipment Group LLC*, 289 F.R.D. 387, 388 (D.D.C. 2013) (citation omitted); *see also DL v. District of Columbia*, 274 F.R.D. 320, 325 (D.D.C. 2011) ("[O]nce the party seeking sanctions has shown a violation of Rule 26(e), the party facing possible sanctions must prove that its failure to comply with the rule was substantially justified or is harmless.") (internal quotation marks omitted).

> Federal Rule of Civil Procedure 37(d)(1) states:
>
> (A) Motion; Grounds for Sanctions. The court where the action is pending may, on motion, order sanctions if:
>> (i) a party or a party's officer, director, or managing agent—or a person designated under Rule 30(b)(6) or 31(a)(4)—fails, after being served with proper notice, to appear for that person's deposition.

Fed. R. Civ. P. 37(d)(1). This court has held that a party's "failure to educate its Rule 30(b)(6) witness with respect to . . . every one of the . . . deposition topics was significant, conscious and material to plaintiff's discovery of their case and, therefore . . . [the defendant] effectively failed to appear for the purposes of Rule 37(d)." *In re Vitamins Antitrust Litigation*, 216 F.R.D. 168, 174 (D.D.C. 2003).

Once a court decides to sanction a party, it must then calibrate the extent of the sanction "guided by the concept of proportionality between the offense and sanction" such that any sanction is just. *See DL*, 274 F.R.D. at 325 (citing *Bonds v. District of Columbia*, 93 F.3d 801, 808 (D.C. Cir. 1996)). Deterrence is a legitimate aim for the court's use of sanctions "not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent." *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 643 (1976).

**ANALYSIS**

The undersigned finds that the District's conduct constituted a violation of both Rule 26(e) and Rule 37(d) sufficient to warrant the imposition of sanctions against it. An analysis of each violation and the appropriate sanction is outlined below.

*Rule 37(c)(1) Violations*

Plaintiff argues that the District's failure to supplement its disclosure with regard to the TMS data and the actual over-detention reports amount to a violation of Rule 26(e). The Court agrees. Under Rule 26, a party who has already made a disclosure, either by means of an interrogatory response or a request for production, must "supplement or correct its disclosure or response . . . in a *timely* manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect." Fed. R. Civ. P. 26(e)(1)(A) (emphasis added). The District

responded to Plaintiff's request for TMS by sending an email to Plaintiff's counsel that stated, "We have been advised that the TMI [sic] information you requested does not exist." Exhibit 1, District Email to Plaintiff (ECF No. 39-2) at 1. Assuming that the District was acting on an incorrect, but sincerely held belief that the TMS data did not actually exist, it was still under an obligation to supplement its response in a timely manner once the actual existence of the TMS data became known.

Plaintiff, acting on the assertion that the TMS data did not exist, noticed a 30(b)(6) deposition on the spoliation of that data. It was only on the day of the deposition that a portion of the TMS data was provided to Plaintiff. Even if, as Defendant contends, the District received the TMS data on the morning of the deposition and "provided it as soon as it could do so," Defendant's Opposition at 5, n.1, Plaintiff is entitled to the costs associated with taking the deposition. The deposition was predicated on the inaccurate representation from the District that the TMS data did not exist, and would not have been necessary had Defendant provided accurate disclosure at the outset of discovery.

Additionally, Rule 37(c)(1) allows for a party to avoid sanctions relating to the failure to disclose or supplement by showing that "the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Plaintiff asserted at the hearing on this motion that there was no justification provided for the District's misstatement regarding the purported non-existence of the TMS data. Rather than argue that the misstatement or the delay in supplementing the TMS data was justified in any way, counsel for Defendant raised for the first time at the hearing the argument that it was under no obligation to provide the TMS data to Plaintiff prior to the 30(b)(6) deposition because Plaintiff had not submitted an official document request.

The undersigned finds that this argument is unpersuasive for several reasons. In the first instance, the District was on notice that Plaintiff was seeking the TMS data in December 2015 when Plaintiff deposed Mr. Jones and first learned of the TMS system. Exhibit 10, Deposition of Jack Jones (ECF No. 39-11) at 8 ("Plaintiff will be requesting the TMS, the native data format which indicates, as the testimony indicated, that it shows the upload date for each document when it's uploaded."). Most dissuasive, however, is the fact that the District had agreed to provide TMS data to Plaintiff within "two (2) weeks" of the Joint Status Report submitted to the Court on January 29, 2016. *See* Joint Status Report (ECF No. 27) at 2. The District cannot simultaneously hold that it has complied with its disclosure requirement by informing Plaintiff that the TMS data did not exist on February 12, 2016, while at the same time contend that it was under no obligation to provide any TMS data until it received the notice of the second 30(b)(6) deposition. Because the District previously informed the Court that it would comply with a recognized request for TMS data in January, its argument that it was under no such obligation until February is without merit.

Accordingly, the undersigned finds that the District has violated its discovery obligations under Rule 26(e) in failing to timely supplement its misrepresentation that the TMS data did not exist and will, therefore, award Plaintiff fees and costs associated with his pursuit of the TMS data. The District's argument that its disclosure of the TMS data "*before* the deposition" fulfilled its obligation is similarly unpersuasive. Defendant's Opposition at 6 (emphasis in original). Plaintiff received some of the TMS data on the *morning of* the deposition, and—as the District conceded at the hearing on this motion—would have already expended both the costs of holding the deposition and the fees associated with counsels' preparation for the deposition.[2]

---

[2] Plaintiff maintains that he has still not been provided "any TMS data with regard to case no. 2014 CMD 7806." Plaintiff's Reply at 7. The undersigned views this statement as one containing a typographical error that should read

Plaintiff's second allegation revolves around a ten-month delay in the production of over-detention reports. The District argues that it comported with the requirements of Rule 26(e) when it supplemented its disclosure several times throughout the discovery period. *See* Defendant's Opposition at 6. The undersigned finds, however, that such supplementation was insufficient to comply with Rule 26. Plaintiff has been consistent in seeking over-detention reports. Plaintiff's first response for production of documents in March 2015 sought "all reports prepared by the District of Columbia relating to overdetention of inmates at the D.C. Jail between March 1, 2007 and April 10, 2014." Plaintiff's P&A at 5; Defendant's Opposition at 6. The District admits that, in response, it did not provide the reports themselves, but instead pointed to the answer to Interrogatory No. 2, which contained "a table purporting to identify the number of overdetentions occurring by month between March 2009 through April 2014." Defendant's Opposition at 6.

Plaintiff then tried again in his second request for production of documents in September 2015, seeking "discrepancy reports from March 2009 through April 2014." Plaintiff's P&A at 5; Defendant's Opposition at 6. While the wording is slightly different, counsel for the District conceded at the hearing that when Plaintiff requested "discrepancy reports," counsel understood that to mean that Plaintiff was requesting over-detention reports. Still, the District failed to produce the actual reports, even though such reports were authored and stored by the same designated 30(b)(6) witness who had provided the answer to Interrogatory No. 2—namely Ms. Myrick. It was only at the 30(b)(6) deposition that Plaintiff learned that actual over-detention reports existed and propounded a third request for the production of documents listing the actual reports contained on Ms. Myrick's computer. Only then did the District produce the reports.

---

"2012 CMD 7806" so as to adequately differentiate it from any TMS data relating to case number 2014 CMD 452, which has been provided to Plaintiff.

As in the case of the TMS data, the District offers no explanation or attempted justification for why it failed to produce the over-detention reports that Plaintiff requested. Rather, the District argues that it adequately supplemented its disclosures. Defendant's Opposition at 6. The undersigned finds that while the District did attempt to supplement its disclosure, it failed to provide the actual reports as Plaintiff repeatedly requested. Accordingly, the District did not satisfy its obligations under Rule 26(e), and therefore Plaintiff is entitled to a sanction of costs and fees associated with the extended discovery needed to obtain the over-detention reports.

*Rule 37(d) Violations*

Plaintiff alleges that the District, in addition to violating Rule 37(c), failed to properly educate a designated 30(b)(6) witness in violation of Rule 37(d). Plaintiff noticed two 30(b)(6) deposition and the District designated Ms. Myrick as the witness for both depositions. Plaintiff argues that Ms. Myrick's failure to search for or bring the over-detention reports to the first deposition, and her failure to search for or bring TMS data related to case number 2012 CMD 7806 to the second deposition, amount to violations of Rule 37(d).

With regard to the first deposition regarding over-detention reports, the undersigned does not agree that Ms. Myrick was a "woefully unprepared" designated witness – *i.e.* one who "knows nothing about the topics and does nothing to inform [herself] about them." *See Covad Communications Co. v. Revonet, Inc.*, 267 F.R.D. 14, 25 (D.D.C. 2010). Indeed, Plaintiff has reduced his request for fees and costs associated with the first 30(b)(6) deposition because "although Ms. Myrick was not prepared to testify on the overdetention reports, she did testify on topics other than the overdetention reports." Declaration in Support of Plaintiff's Motion for Costs and Fees ("Klaproth Declaration") (ECF No. 39-14) at 5, n.2. This court has held that

"[i]gnorance in one area, provided it is professed in good faith, may lead to additional 30(b)(6) witnesses, but it should not lead to sanctions that should be reserved for the 'bandying' that the courts have found unacceptable. *Covad*, 267 F.R.D. at 25–26. Plaintiff's main concern appears to be the failure by the District to disclose the over-detention reports themselves, rather than Ms. Myrick's failure to testify about them. The undersigned notes that since sanctions will be awarded based on the District's violation of Rule 37(c)(1), Ms. Myrick's failure to bring the over-detention reports with her to the first 30(b)(6) deposition does not, in and of itself, warrant the imposition of additional sanctions against the District.

The District's conduct regarding the second 30(b)(6) deposition, however, is more troubling. Once again Ms. Myrick was the designated witness on the subject of the TMS data, and once again, Ms. Myrick failed to bring, or even search for, the TMS data related to case number 2012 CMD 7806. When asked why she did not review the requested material Ms. Myrick stated "I had no reason to." Exhibit 12, Jeanette Myrick Deposition II (ECF No. 39-13) at 4. Ms. Myrick stated that she was aware of the documents that Plaintiff had requested in his deposition notice, but failed to provide any explanation for her failure to review or bring those documents with her. *Id.* at 3–4.

As the court has noted, "[m]onetary sanctions are mandatory under Rule 37(d) for failure to appear by means of wholly failing to educate a Rule 30(b)(6) witness, unless the conduct was substantially justified." *In re Vitamins Antitrust Litigation*, 216 F.R.D. at 174. In its written filings, the District offers no justification for Ms. Myrick's failure to adequately prepare, stating simply "the District's 30(b)(6) witnesses appeared at the deposition, and Ms. Myrick appeared twice." Defendant's Opposition at 8.[3] In this case, some justification is required. Plaintiff

---

[3] At the hearing on this motion, the District argued that Ms. Myrick was in fact prepared for the deposition because she helped prepare the requested discovery material for disclosure. This does not, however, address Ms. Myrick's

deposition notice include only two topic areas, *see* Exhibit 5, Deposition Notice Regarding TMS Data (ECF No. 39-6), and yet Ms. Myrick failed to review one of the two documents pertaining to Plaintiff. Accordingly, the undersigned finds that sanctions pursuant to Rule 37(d) are appropriate.

### *Scope of Sanctions*

Plaintiff seeks sanctions in three forms: (1) costs and fees related to the additional discovery and Plaintiff's bringing of the instant motion, (2) an order precluding the District from using the TMS data in a motion, hearing, or at trial, and (3) an order informing the jury that the District failed to disclose the TMS data and over-detention reports in a timely manner. "District courts are entrusted with broad discretion regarding whether to impose sanctions under Rule 37 and the nature of any sanctions to be imposed." *Banks v. Office of the Senate Sergeant-At-Arms*, 241 F.R.D. 370 (D.D.C. 2007).

Here, the undersigned finds that an order informing the jury about the District's discovery failures is reserved for cases in which violations are more extreme than the present instance. Additionally, an order precluding the use of all TMS data would not be appropriate since TMS data regarding case number 2014 CMD 452 was provided to Plaintiff, albeit belatedly. Therefore, since the District has not provided Plaintiff with the TMS data relating to case number 2012 CMD 7806, the District shall be precluded only from using TMS data related to case number 2012 CMD 7806 in any motion, at a hearing, or at trial. Finally, the undersigned finds that in the interest of deterrence, the District shall pay Plaintiff's costs and fees associated with

---

admitted failure to search for and review the TMS data with regard to 2012 CMD 7806 prior to her second 30(b)(6) deposition.

the additional discovery required, and Plaintiff's efforts to recover those costs and fees in this action.

### *Attorneys' Fees and Costs*

The final dispute in this matter regards Plaintiff's requested attorney fee award. The District challenges both the applicable rate, as well as the number of hours claimed in Plaintiff's Motion. The undersigned notes that "a district court has broad discretion in determining the size of an expenses award under Rule 37." *Beck v. Test Masters Educational Services, Inc.*, 289 F.R.D. 374, 382 (D.D.C. 2013) (citing *Tequila Centinela, S.A. de C.V. v. Bacardi & Co.*, 248 F.R.D. 64, 68 (D.D.C. 2008)). When determining the proper size of the award, "the Court uses the lodestar method, multiplying a reasonably hourly rate by the reasonable number of hours expended." *Id.*

With regard to the reasonableness of the hourly rate, the District argues that the rates Plaintiff has requested "are excessive, unreasonable and would constitute a windfall for Plaintiff's counsel." Defendant's Opposition at 11. "Reasonable rates are those in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Beck*, 289 F.R.D. at 383 (quoting *Covington v. District of Columbia*, 57 F.3d 1101, 1109 (D.C. Cir. 1995)) (internal quotation marks omitted). While the burden is on the moving party to demonstrate the reasonableness of the rates requested, Plaintiff may satisfy that burden by "point[ing] to such evidence as an updated version of the *Laffey* matrix—a schedule of charges based on an attorney's experience developed in *Laffey v. Northwest Airlines, Inc.*, 572 F. Supp. 354 (D.D.C. 1983)—or the U.S. Attorney's Office matrix, or their own survey of prevailing market rates in the community." *Id.*

Plaintiff notes that the LSI-*Laffey* rates were recently affirmed by this Circuit in another case involving federal civil rights litigation. Klaproth Declaration at 5; Declaration of David Akulian in Support of Plaintiff's Motion for Costs and Fees (ECF No. 39-15) at 1. The D.C. Circuit held that an award of LSI-*Laffey* rates in a civil rights action was not an abuse of the District Court's discretion. *Salazar ex rel. Salazar v. District of Columbia*, 809 F.3d 58, 64 (D.C. Cir. 2015). While the District argues that the USAO *Laffey* rates are more appropriate, it fails to present sufficient evidence to rebut the reasonableness of the LSI-*Laffey* rates requested by Plaintiff.

The District cites several cases wherein courts in this district have awarded USAO *Laffey* rates rather than LSI-*Laffey* rates. In addition, the District presents a Statement of Interest from the United States, which argues that USAO *Laffey* rates should be the highest rates awarded for attorney fees. *See* Statement of Interest of the United States (ECF No. 40-2). The undersigned, notes, however, that this document was first filed in an unrelated case, *Eley v. District of Columbia*, No. 11-0309, 2106 WL 4435187 (D.D.C. Aug. 22, 2016), prior to the Circuit's ruling in *Salazar*. While the Statement contends that LSI-*Laffey* rates are never appropriate in any type of federal litigation, the document deals primarily with Individuals with Disabilities Education Act ("IDEA") cases. *Id.* As it predates *Salazar*, and deals mainly with rates for fees subject to a fee-shifting statute rather than Rule 37 sanctions, the undersigned affords it relatively little weight.

Because Plaintiff has presented evidence that LSI-*Laffey* rates are the prevailing rates for this type of complex federal litigation, and because the District has not provided sufficient evidence to rebut this assertion, the Court will utilize its discretion to award Plaintiff attorneys' fees corresponding to the hourly rate set forth in the LSI-*Laffey* matrix.

Lastly, the District challenges the number of Plaintiff's requested hours, arguing that Plaintiff's counsel has failed to keep accurate records. Defendant's Opposition at 14–15. The District cites to two specific entries as evidence of Plaintiff's counsel's inaccurate record keeping. *Id.* at 15.[4] Plaintiff argues that any inaccuracies were based on typographical errors and that Plaintiff's counsel kept contemporaneously recorded time records. Plaintiff's Reply at 11–12. The undersigned accepts that Plaintiff's submitted records may contain typographical errors that would not preclude reimbursement. As the District notes, however, some of Plaintiff's entries reflect activity that Plaintiff's counsel would be required to perform regardless of any misconduct by the District. Defendant's Opposition at 15. Upon review of the records submitted by Plaintiff, the undersigned has identified four entries that are not directly related to the District's discovery violations. *See Cobell v. Babbitt*, 188 F.R.D. 122, 127 (D.D.C. 1999) (citing *Westmoreland v. CBS, Inc.*, 770 F.2d 1168, 1179 (D.C. Cir. 1985)) ("A near 'but for' relationship must exist between the Rule 37 violation and the activity for which fees and expenses are awarded."). On the chart labeled "Time Incurred Obtaining TMS Data" the undersigned will excise both entries on 1/4/2016 for a total reduction of 1.1 hours. Both entries predate the District's failure to supplement TMS data under Rule 26(e). Additionally, on the chart labeled "Time Incurred Obtaining Overdetention Reports" the undersigned will excise the 3/27/2015 entry and the 1/27/2015 entry for a total reduction of 1.8 hours. Both entries reflect activity that Plaintiff's counsel would have been required to perform regardless of the District's failure to supplement under Rule 26(e).

---

[4] "[T]he table labeled 'Time Incurred Obtaining Overdetention Reports' contains the two following notable entries: **1/12/2015** – email re overdetention report – 0.2; and **1/27/2015** – review overdetention reports – 0.5." Defendant's Opposition at 15.

In total, the undersigned will reduce the applicable number of hours for Mr. Klaproth by 2.9. Accordingly, the Court will award Plaintiff attorneys' fees accordingly:

|  | Rate | Hours | Fee Award |
|---|---|---|---|
| Mr. Klaproth | $ 406.00 | 30.9 | $ 12,545.40 |
| Ms. Akulian | $ 661.00 | 8.9 | $ 5,882.90 |
| **Total** |  |  | **$ 18,428.30** |

In addition to fees, the Court will award Plaintiff the costs associated with both 30(b)(6) depositions as requested by Plaintiff.

**CONCLUSION**

Upon consideration of Plaintiff's Motion, Defendant's Opposition thereto, Plaintiff's Reply in support thereof, the arguments of the parties at the hearing held on September 14, 2016, the entire record, and for the reasons outlined above, the undersigned finds that the District has violated Federal Rule of Civil Procedure 37(c) and (d), and that Plaintiff is entitled to sanctions against the District in the form of limited preclusion, as well as costs and fees. Plaintiff is not entitled to sanctions in the form of an order informing the jury of the violations. Accordingly, Plaintiff's Motion for Costs and Fees (ECF No. 39) will be **GRANTED IN PART** and **DENIED IN PART**.

The Court, exercising its discretion in this matter, holds that the District will be precluded from using TMS data relating to case number 2012 CMD 7806 in any motion, at a hearing, or at trial. In addition, the District shall reimburse Plaintiff for attorneys' fees in the amount of $18,428.30, and costs in the amount of $454.93. An Order accompanying this Memorandum Opinion will be issued contemporaneously.

/s/
DEBORAH A. ROBINSON
United States Magistrate Judge

Date: December 6, 2016