**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

GREGORY SMITH,

Plaintiff,

v.

DISTRICT OF COLUMBIA, *et al.*,

Defendants.

Case No. 15-CV-161 (ABJ)

**DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

Defendants District of Columbia, Jack Jones and Jeanette Myrick (Defendants), through undersigned counsel, pursuant to Fed. R. Civ. P. 56, move the Court for partial summary judgment as to Plaintiff's First Amended Complaint [36]. Defendants are entitled to summary judgment on Plaintiff's Fifth Amendment claim pursuant to 42 U.S.C. § 1983 because 1) Plaintiff cannot establish a Fifth Amendment violation; 2) Defendants Jones and Myrick are entitled to qualified immunity; and 3) Plaintiff cannot prove municipal liability against the District. Additionally, Plaintiff's common law false imprisonment claim fails as a matter of law. Plaintiff's negligent supervision and training claim fails because he cannot establish a standard of care that was breached by Defendants, and he failed to comply with D.C. Code § 12-309.

A memorandum of points and authorities and a proposed order are attached hereto for the Court's consideration.

Respectfully submitted,

KARL A. RACINE
Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General, Civil Litigation Division

/s/ Michael K. Addo
MICHAEL K. ADDO
D.C. Bar No. 1008971
Chief, Civil Litigation Division, Section IV

/s/ Alicia M. Cullen
ROBERT A. DEBERARDINIS, JR.
D.C. Bar No. 335976
ALICIA M. CULLEN
D.C. Bar No.1015227
Assistant Attorney General
441 Fourth Street, NW, Suite 630 South
Washington, DC 20001
(202 724-6642; (202) 442-9840
(202) 741-8895; (202) 715-7721 (facsimile)
robert.deberardinis@dc.gov; alicia.cullen@dc.gov

*Counsel for Defendants*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| GREGORY SMITH, Plaintiff, | |
| v. | Case No. 15-CV-161 (ABJ) |
| DISTRICT OF COLUMBIA, *et al.*, Defendants. | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

Defendants District of Columbia, Jack Jones, and Jeanette Myrick (Defendants),through undersigned counsel, submit this Memorandum of Points and Authorities in support of their Motion for Partial Summary Judgment.

**STATEMENT OF FACTS**

This action arises as a result of Plaintiff Gregory Smith's (Plaintiff) incarceration with the District of Columbia Department of Corrections. On March 15, 2014, the District of Columbia Department of Corrections (DOC) received a commitment order from D.C. Superior Court in Case Number 2012 CMD 007806 ordering that Plaintiff was to be committed to the custody of DOC until further order from the Court. Statement of Material Facts as to Which There Is No Genuine Dispute (hereinafter "SOMF") at ¶ 1. On that same day, DOC also received a commitment order from D.C. Superior Court in Case Number 2014 CMD 004452 ordering that Plaintiff was to be committed to the custody of DOC until further order from the Court. *Id*. at ¶ 2. Three days later, on March 18, 2014, Plaintiff was transported from the D.C. Jail to D.C.

Superior Court, and was ordered released in both Case Number 2012 CMD 007806 and in Case Number 2014 CMD 004452. *Id* at ¶ 3.

When a D.C. Superior Court judge authorizes a release, the courtroom clerk is responsible for generating the release order. *Id.* at ¶ 4. The clerk then prints two copies of the order for the judge's signature. The clerk also signs both copies of the order. *Id.* at ¶ 5. One copy is to be scanned into CourtView, which is a software program that creates an electronic case file, and one copy is to be given to the Deputy U.S. Marshal in charge of the prisoner. *Id.* at ¶ 6. The Deputy U.S. Marshal would then sign a copy of the Order. *Id.* at ¶ 7. The clerk is responsible for taking the Court's copy to the scanning department on the fourth floor at D.C. Superior Court for it to be scanned into CourtView. *Id.* at ¶ 8.

The Deputy U.S. Marshal receives a copy of the order from the courtroom clerk. *Id.* at ¶ 9. At some point, the Deputy U.S. Marshal would then take the release order and prisoner to the main cellblock in D.C. Superior Court. *Id.* at ¶ 10. Misdemeanor inmates are released directly from D.C. Superior Court. *Id.* at ¶ 11. However, an individual cannot be released until his status is reviewed by a legal instrument examiner in the records office at the D.C. Jail and it is determined that the individual has no other cases or other detention holds that require further incarceration. *See id.* at ¶¶ 12-21. In order to process a release order, a legal instrument examiner uploads the document into an electronic system known as Transaction Management System (TMS). *Id.* at ¶ 12. The legal instrument examiner then pulls the inmate's institutional file for review to ensure the release order matches the commitment by PDID number, inmate's name, date of birth, and case number. *Id.* at ¶ 13. After that is completed, the legal instrument examiner accesses DOC's internal system known as JACCS to ensure all documents are posted, all information is accurate, the release order matches with the commitment order, and closes out

the case as directed by the Court's order. *Id.* at ¶ 14. Once the release order is verified by a legal instrument examiner and matches the information in JACCS, the release order is scanned into DOC's internal system called Paper Clips. *Id.* at ¶ 15. The legal instrument examiner is also required to check MyJUSTIS to verify that the individual can be released on that specific case. *Id.* at ¶ 16. MyJUSTIS is a court-based system that reflects information that was inputted by the court. *Id.* at ¶ 17. In late 2012 or early 2013, DOC staff began to utilize MyJUSTIS, a system that reflects the same information contained in CourtView. *Id.* at ¶ 18. A legal instrument examiner is also required to perform a Washington Area Law Enforcement System (WALES) check to identify any active local warrants, as well as conduct a National Crime Information Center (NCIC) check to identify any active felony, extraditable, or fugitive warrants. At some point, WALES became eAgent. *Id.* at ¶ 19. After a legal instrument examiner performs his tasks, a supervisory legal instrument examiner is required to double check all work completed by the legal instrument examiner and prepare a release authorization form. *Id.* at ¶¶ 20-21.

DOC received and processed the release order for Gregory Smith in Case Number 2014 CMD 004452 on March 18, 2014. *Id.* at ¶ 22. With respect to the release order for Case Number 2012 CMD 007806, a legal instrument examiner at the records office received and stamped the order on March 18, 2014, at approximately 9:33PM, but unfortunately the order was not processed. *Id.* at ¶ 23. Plaintiff was subsequently held at the facility until April 10, 2014, at which time he was released. *Id.* at ¶ 24.

Plaintiff filed suit against the District of Columbia, legal instrument examiner Jack Jones, and Correctional Program Administrator Jeanette Myrick. *See generally* First Am. Compl. [36]. Plaintiff brings claims for 1) violation of the Fifth Amendment pursuant to 42 U.S.C. § 1983 (Count I); 2) common law false imprisonment (Count II); 3) negligence (Count III); and 4)

negligent supervision and training (Count IV). Defendants now move for summary judgment as to all of these claims with the exception of Plaintiff's negligence claim (Count III).

## STANDARD OF REVIEW

Summary judgment is appropriate pursuant to Fed. R. Civ. P. 56 where, as here, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Brehm v. Dep't of Defense*, 577 F. Supp. 2d 446, 448 (D.D.C. 2008). "[C]ourt[s] must look to the substantive law on which each claim rests" in determining which facts are material. *Brehm*, 577 F. Supp. 2d at 448 (citation omitted). "A genuine issue is one whose resolution could establish an element of a claim or defense, and, therefore, affect the outcome of the action." *Id.* (internal quotation marks and citation omitted).

To survive summary judgment, the nonmoving party must present evidence to support each essential element of his or her claims. *Celotex v. Cattret*, 477 U.S. 317, 322-23 (1986). It "may not rely solely on allegations or conclusory statements" and must instead "present specific facts that would enable a reasonable jury to find in its favor." *Brehm*, 577 F. Supp. 2d at 448 (citations omitted). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.

## ARGUMENT

### I. DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S FIFTH AMENDMENT CLAIM PURSUANT TO 42 U.S.C. § 1983.

#### a. Defendants Jack Jones and Jeanette Myrick are Not Liable for Any Violation of Plaintiff's Fifth Amendment Rights.

Defendant Jack Jones is a legal instrument examiner for the Department of Corrections who was responsible for processing prisoner intakes and releases at D.C. Jail. Plaintiff alleges that Defendant Jones processed the March 18, 2014 release order for Case Number 2014 CMD 4452 but he then failed to review the CourtView System or Plaintiff's institutional file to determine whether Plaintiff had any other court orders requiring processing. First Amend. Compl. at ¶ 9. Had he done so, Plaintiff claims he would have discovered that Plaintiff was also being held in Case Number 2012 CMD 7806 and needed to be processed for release in that case. *Id.*

Defendant Jeanette Myrick is employed at the D.C. Jail as a Correctional Program Administrator and is responsible for "oversee[ing] the day-to-day operations of the Inmate Records Office" at D.C. Jail. In that capacity, she supervises the legal instrument examiners. Plaintiff alleges that, despite her knowledge of the failings of her subordinates, she failed to undertake steps that would have prevented overdetentions and as a result Plaintiff was overdetained. *Id.* at ¶ 8.

Plaintiff seeks to hold Defendants Smith and Myrick liable for a violation of what he terms is his "constitutional rights." *Id*. at ¶¶ 33, 34. Although Plaintiff fails to identify what constitutional rights he claims were violated, Defendants presume Plaintiff is referring to his Fifth Amendment substantive due process rights.

As demonstrated below, Defendants Jones and Myrick are entitled to qualified immunity as to Plaintiff's constitutional claim.

**b. Defendants Jones and Myrick Are Entitled to Qualified Immunity.**

It is well settled that public officials enjoy a qualified immunity from constitutional and statutory claims against them. *Saucier v. Katz*, 533 U.S. 194, 200 (2001); *Lederman v. United States*, 291 F.3d 36 (D.C. Cir. 2002). The doctrine of qualified immunity shields a public official

from constitutional liability, insofar as the official's conduct does not violate a clearly established statutory or constitutional right of which a reasonable person would have known. *See Pearson v. Callahan*, 555 U.S. 223, 232-33 (2009) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Thus, a government official cannot be held personally liable for conduct that he would not have reasonably known was unconstitutional. *Saucier v. Katz,* 533 U.S. 194, 2002 (2001). The right the official is alleged to have violated must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. *Id.* at 202.

The Supreme Court has further explained that the trial court must consider two factors in analyzing the merits of a qualified immunity claim. *Pearson*, 555 U.S. at 231-32. The Court must determine whether plaintiff has proved facts that show deprivation of a constitutional right. *Id*. at 232. The Court must also decide whether the constitutional right at issue was clearly established at the time of the officer's alleged conduct. *Id*. The Court has the discretion to decide which question should be analyzed first, in light of the particular circumstances of the case at hand. *Id*. at 235-36.

Here, there exists insufficient evidence in this case to demonstrate a Fifth Amendment violation on the part of Defendants Jones and Myrick. In the alternative, should the Court find a violation of Fifth Amendment, the particularized facts of this case were not clearly established at the time of the violation.

**c. Plaintiff Cannot Establish A Fifth Amendment Violation.**

Only the most egregious and arbitrary acts of government officials are sufficient to trigger the substantive due process clause. *See Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998) (citing *Collins v. Harker Heights*, 503 U.S. 115, 129 (1992)). The conduct must be "so egregious, so outrageous that it may fairly be said to shock the contemporary conscience." *Lewis*, 523 U.S. at 847 n.8; *see also Collins*, 503 U.S. at 128; *Butera v. District of Columbia*, 235

F.3d 637, 651 (D.C. Cir. 2001). The action most likely to rise to the "conscious shocking level," is conduct intended to injure the plaintiff in a way unjustifiable by any government interest. *FOP v. Williams*, 375 F.3d 1141, 1145 (D.C. Cir. 2004), quoting *Lewis*, 523 U.S. at 849 (citing *Daniel v. Williams*, 474 U.S. 327, 331 (1986)). This stringent requirement exists to differentiate substantive due process from local tort law. *Butera*, 235 F.3d at 651.

Here, Plaintiff does not appear to allege nor is there any evidence in the record demonstrating that Defendants Jones and Myrick intended to cause the Plaintiff to be overdetained. Instead, Plaintiff proceeds on a "failure to act" theory. In the case of Defendant Jones, the "failure to act" was his alleged failure to undertake additional record searches that would have allegedly revealed that Plaintiff should be released from incarceration on March 18, 2014. As to Defendant Myrick, the "failure to act" is her alleged failure to properly supervise the inmate records office at the D.C. Jail.

A plaintiff alleging a Fifth Amendment "failure to act" violation must prove that the official was at least deliberately indifferent to his constitutional rights. *See Collins*, 503 U.S. at 117; *City of Canton v. Harris*, 489 U.S. 378, 390 (1989) (city must exhibit deliberate indifference toward individual in its custody before he can bring § 1983 claim based on its failure to train officers). Deliberate indifference is "a mental state more blameworthy than negligence," and is "a state of mind that is the equivalent of criminal recklessness." *Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003). Conduct rising to the level of deliberate indifference must also shock the conscience. *Estate of Phillips v. District of Columbia*, 455 F.3d 397, 404 (D.C. Cir. 2006).

Deliberate indifference requires an omission of "indifference to a serious risk that is voluntary, not accidental." *Farmer v. Brennan*, 511 U.S. 825, 840 (1994). Thus, there can be no

liability "unless the official knows of and disregards an excessive risk…; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. There is no liability for "an official's failure to alleviate a significant risk that he should have perceived but did not." *Id.* at 838.

Given the standard for establishing deliberate indifference, the Supreme Court has categorically rejected the notion that common law torts or negligently inflicted harm may provide the basis for a substantive due process claim. *Lewis*, 523 U.S. at 848-49. Thus, inadvertent errors or even negligence in the performance of official duties, do not warrant redress under the substantive due process clause. *Cnty. of Sacramento,* 523 U.S. at 849, ("the Constitution does not guarantee due care on the part of state officials; liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process."); *see also Silverman v. Barry*, 845 F.2d 1072, 1080 (D.C. Cir. 1988).

Here, it cannot be said that Defendants Jones and Myrick were deliberately indifferent to any risk that Plaintiff might be overdetained. As to Defendant Jones, at best, from what can be gleaned from the record in this matter and as alleged by Plaintiff, Defendant Jones processed the March 18, 2014 release order for Case Number 2014 CMD 4452, but he then allegedly failed to review the CourtView system or Plaintiff's institutional file to determine whether Plaintiff had any other court orders requiring processing. First Amend. Compl. at ¶ 9. Had he done so, he would have allegedly discovered that Plaintiff was also being held in Case Number 2012 CMD 7806 and needed to be processed for release in that case. *Id.*

At worst, the conduct of Defendant Jones in failing to undertake further investigation after processing the release in one case amounts to negligence. As ably stated by Plaintiff's expert penologist, "I don't know if one of these individuals who is responsible for reviewing the

record had a migraine headache and they didn't review things quite as carefully." Lindsay Dep. at 69:18-24. Succinctly stated, there is absolutely no evidence in the record from which it could be concluded that the alleged failing amounted to anything more than negligence. For example, Plaintiff might enjoy a colorable Fifth Amendment claim had Defendant Jones deliberately failed to undertake further investigation of the records after processing the release, because he wanted to leave work early. *See Farmer v. Brennan,* 511 U.S. 825, 840 (1994) (Deliberate indifference requires an omission of indifference to a serious risk that is voluntary, not accidental.) Because Plaintiff cannot demonstrate a violation of the Fifth Amendment, Defendant Jones is entitled to qualified immunity.

As to Defendant Myrick, a defendant may be held liable as a supervisor under Section 1983 if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional deprivation. *International Action Center v. United States*, 365 F.3d 20, 27-28 (D.C. Cir. 2004). A supervisor who merely fails to detect and prevent a subordinate's misconduct, therefore, cannot be liable for that misconduct. "The supervisor must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see." *Id*. at 28, quoting *Jones v. City of Chicago,* 856 F.2d 985, 992 (7th Cir.1988) (Posner, J.).

Here, there is a paucity of evidence demonstrating supervisory deliberate indifference on the part of Defendant Myrick. For one, there is no evidence that she had any personal involvement in the processing of Plaintiff's paperwork. Nor is there any evidence that she was aware of any chronic deficiencies in Defendant Jones' work which she chose to ignore. Moreover, if staff in the inmate records office learn of an overdetention incident, they are required to report the incident to their supervisor. SOMF at ¶ 32. Additionally, when the office

learns of an incident of overdetention, it is investigated and a report is prepared with the inmate's name, DC number, days of overdetention, and reasons. *Id.* at ¶ 33. The report is transmitted by Defendant Myrick to DOC's Deputy Director. *Id.* at ¶ 34. If an overdetention is the result of an error by a DOC employee, the employee is disciplined. *Id.* at ¶ 35. Additionally, when records office staff are hired, they receive forty hours of on-the-job training. *Id.* at ¶ 28. This training covers topics directly related to the work performed by this office, including intakes, court returns, processing releases, and sentence computations. *Id.* at ¶ 29. Indeed, it is clear that Defendant Jones was familiar with the procedure in place for processing a release order. *Id.* at ¶ 27. Given these scenarios, it is clear that Defendant Myrick did not violate Plaintiff's Fifth Amendment rights and as a result, she is entitled to qualified immunity.

Should the Court find a constitutional violation on the part of either Defendant Jones or Myrick, the relevant Fifth Amendment law would not have placed them on notice that their conduct violated Plaintiff's Fifth Amendment rights. *See Butera v. District of Columbia*, 235 F.3d 637, 652-54 (plaintiff's verdict as to Fifth Amendment claim reversed where law in light of the circumstances of case was not clearly established). Here, in light of the facts and circumstances of this case, case law was not available to the Defendants that would have established that their conduct was unconstitutional.

**d. Plaintiff Cannot Establish a Fifth Amendment Claim Against the Unidentified Legal Instrument Examiner.**

As to the release order in Case Number 2012 CMD 007806, at best, Plaintiff can establish that the order was received and stamped by a legal instrument examiner or lead legal instrument examiner at the records office on March 18, 2014, at approximately 9:33PM, but for unknown reasons was not processed. SOMF at ¶ 23. As stated in the above discussion regarding the constitutional culpability of Defendant Jones, there exists no evidence to support the claim

that the failure to process the release order was anything more than inadvertence or clerical error on the part of the unidentified employee. *See Silverman v. Barry,* 845 F.2d 1072, 1080 (D.C. Cir. 1988) ("Inadvertent errors, honest mistakes, agency confusion, even negligence in the performance of official duties, do not warrant redress under [42 U.S.C. § 1983].") Accordingly, Plaintiff cannot demonstrate that the failure to process the release order resulted from deliberate indifference on the part of the unidentified employee.[1]

**e. The District of Columbia is Entitled to Summary Judgment As To Plaintiff's Fifth Amendment Claim.**

Because there is insufficient evidence to establish a Fifth Amendment claim as to the individual defendants, Plaintiff cannot maintain his Fifth Amendment claim against the District. A municipality's liability under § 1983 is limited; it cannot be held liable under 42 U.S.C. § 1983 on the theory of *respondent superior*. *See Monell v. Dep't of Soc. Serves. of City of N.Y.,* 436 U.S. 658, 691, 694 (1978); *Triplett v. District of Columbia*, 108 F. 3d 1450, 1453 (D.C. Cir. 1997); *Hunter v. District of Columbia*, 943 F. 2d 69, 74 (D.C. Cir. 1991); *Graham v. Davis*, 880 F. 2d 1414, 1421 (D.C. Cir. 1989). "[A] local government may not be substituted under § 1983 for an injury inflicted by its employees or agents. Instead it is when execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible under § 1983." *Monell*, 426 U.S. at 694. A prima facie case for a *Monell* claim requires both (1) a "predicate constitutional violation" and (2) "that a custom or policy of the municipality caused the violation." *See Baker v. Dist. of Columbia,* 326 F.3d 1302, 1305 (D.C. Cir. 2003), citing *Collins v. City of Harked Heights, Tex.* 503 U.S. 115, 120 (1992); *accord Brown v. Dist. of*

[1] Moreover, the District cannot be found liable for a Fifth Amendment violation on the part of an unidentified employee based upon a theory of respondeat superior liability. *See Monell v. Dep't of Soc. Serves. of City of N.Y.,* 436 U.S. 658, 691, 694 (1978)

*Columbia,* 514 F.3d 1279, 1283 (D.C. Cir. 2008); *Kona v. Dist. of Columbia,* 971 F. Supp. 2d 74, 81 (D.D.C. 2013).

In this case, as demonstrated above, there is no predicate Fifth Amendment violation, and as a result the District is also entitled to summary judgment as to Plaintiff's Fifth Amendment claim.

Assuming—for the sake of argument only—that the Court finds a predicate constitutional violation, the District is nonetheless entitled to summary judgment as to Plaintiff's constitutional claim. Municipal liability under Section 1983 attaches only where a deliberate choice to follow a course of action is made from among various alternatives by city policymakers. *City of Canton*, 489 U.S. at 389. This requirement ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality. *Board of the Cnty. Comm'rs v. Brown,* 520 U.S. 397, 403-04 (1997). Accordingly a plaintiff can prove that a municipal custom or policy caused the constitutional harm by demonstrating that: (1) "the municipality or one of its policymakers explicitly adopted the policy that was 'the moving force of the constitutional violation,'" *Warren v. District of Columbia*, 353 F.3d 36, 39 (D.C. Cir. 2004), quoting *Monell*, 436 U.S. at 694; (2) a policymaker "knowingly ignore[d] a practice that was consistent enough to constitute custom," *id.*, citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 130 (1988); or (3) the municipality failed to respond "'to a need . . . in such a manner as to show 'deliberate indifference' to the risk that not addressing the need will result in constitutional violations.'" *Id.*, quoting *Baker* v. *District of Columbia*, 326 F.3d 1302, 1306; *see generally Connick v. Thompson*, 563 U.S. 51 (2011) (Court outlines the requirements for holding a municipality liable under §1983).

Plaintiff apparently does not advance the argument that policymakers have explicitly adopted unconstitutional policies. According to Plaintiff's expert penologist, Plaintiff would not have been overdetained had Defendant Jones followed the procedures in place for processing prisoners. Lindsay Dep. 51:10-12.

In support of his deliberate indifference claim, Plaintiff claims that policymakers of the District knowingly ignored a practice (i.e. overdetentions) that was consistent enough to constitute custom. *See* First Amend. Compl. It is clear, however, that policymakers were not deliberately indifferent. For example, Plaintiff acknowledges that in 2007, 302 inmates were overdetained, 143 in 2008, 56 in 2009, 85 in 2010, 34 in 2011, 8 in 2012, and 11 in 2013. First Amend. Compl. at 29. This drastic reduction in overdetentions did not result by accident. It came about because the District of Columbia addressed the problem. Consequently, no reasonable juror could conclude that the District ignored the overdetention problem and was therefore deliberately indifferent to the problem. *See Barnes v. District of Columbia,* 793 F.Supp. 2d 260, 281 (D.D.C. 2011).

Finally, Plaintiff contends that his overdetention resulted from a lack of training of staff, thereby violating his Fifth Amendment rights. *See* Lindsay Dep. at 38. Because a finding of liability in the context of a failure to train amounts to a judicial determination that "the city itself [decided] to violate the Constitution," the Supreme Court has imposed "a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick v. Thompson*, 563 U.S. 51, 61–62, (2011); *Robinson v. Pezzatt*, 818 F.3d 1, 12 (D.C. Cir. 2016). Moreover, a plaintiff bears the burden of proving that the lack of training actually caused the violation in question. *Connick*, 563 U.S. at 61-62.

Here, there is ample evidence that the Department of Corrections was not deliberately indifferent to the need for training in the inmate records office. When legal instrument examiners are hired, they receive 40 hours of on-the-job training. SOMF at ¶ 28. The on-the-job training covers topics directly related to the work performed by legal instrument examiners such as intakes, court returns, how to process releases, and sentence computations. *Id.* at ¶ 31. The legal instrument examiners are also provided training materials that detail procedures related to their job. *Id.* at ¶ 30. Furthermore, there is no evidence in this case demonstrating that Defendant Jones was unaware of the appropriate procedures for processing inmates. Given the training provided to the staff of the records office, the District cannot be deemed to be deliberately indifferent to a need for training within the records office. Therefore the District is entitled to summary judgment as to Plaintiff's Fifth Amendment failure to train theory.

## II. PLAINTIFF'S COMMON LAW FALSE IMPRISONMENT CLAIM FAILS AS A MATTER OF LAW.

Pursuant to District of Columbia law, false imprisonment is "the restraint by one person of the physical liberty of another without consent or legal justification." *Faneil v. Chesapeake & Potomac Tel. Co. of Md.,* 404 A.2d 147, 150 (D.C. 1979). A claim for false imprisonment "historically has been viewed as an intentional tort." *Johnson v. United States*, 547 F.2d 688, 692 (D.C. Cir. 1976) ("[N]otwithstanding liability for negligence causing a confinement when actual damage ensues, only an act intended to impose confinement or known by the actor to be substantially certain of doing so generates the common law tort of false imprisonment.")

Here, as previously discussed, there is no evidence in the record to demonstrate that Plaintiff's overdetention resulted from anything more than inadvertence or clerical error. In particular, there is no evidence that any Defendant intended Plaintiff to be detained against his will. As a result, Defendants are entitled to summary judgment as to this claim.

## III. PLAINTIFF'S NEGLIGENT SUPERVISION AND TRAINING CLAIM FAILS AS A MATTER OF LAW.

### a. Plaintiff Cannot Establish a Standard of Care That Was Breached By the District.

In any negligence action, the plaintiff "must establish by competent evidence a standard of care; that the defendant violated that standard; and that such violation proximately caused injury to the plaintiff." *District of Columbia v. Carmichael*, 577 A.2d 312, 314 (D.C. 1990) (citation omitted). Expert testimony is required "if the subject in question is so distinctly related to some science, profession or occupation as to be beyond the ken of the average layperson." *Briggs v. Wash. Metro. Transit Area Auth.*, 481 F.3d 839, 845 (D.C. Cir. 2007); *District of Columbia v. Arnold & Porter*, 756 A.2d 427, 433 (D.C. 2000), quoting *Messina v. District of Columbia*, 663 A.2d 535, 538 (D.C. 1995). Expert testimony is not required "if the subject matter is within the realm of common knowledge and everyday experience." *Briggs*, 481 F.3d at 845. Here, the operations of a records office within a detention facility, including standards for the supervision and training of records office staff, are not matters of common knowledge. *See Varner v. District of Columbia*, 891 A.2d 260, 267 (D.C. 2006) (expert testimony is required "in negligence cases . . . which involve issues of safety, security and crime prevention.)"

The expert testimony must articulate and refer to a standard of care by which the defendant's actions can be measured. *Toy v. District of Columbia*, 549 A.2d 1, 6 (D.C. 1988); *District of Columbia v. Peters*, 527 A.2d 1269, 1273 (D.C. 1987). "'The purpose of expert testimony is to avoid jury findings based on mere conjecture or speculation. The sufficiency of the foundation of those opinions should be measured with this purpose in mind.'" *Travers v. District of Columbia*, 672 A.2d 566, 568 (D.C. 1996), quoting *Washington v. Washington Hosp. Ctr.*, 579 A.2d 177, 181 (D.C. 1990). The standard of care must be "specific, articulable (and

articulated)," and directly relate to the defendant's alleged misconduct. *Carmichael*, 577 A.2d at 315; *see Phillips v. District of Columbia*, 714 A.2d 768, 773 (D.C. 1998).

Expert testimony "'is not sufficient if it consists merely of the expert's opinion as to what he or she would do under similar circumstances. Nor is it enough for the expert simply to declare that the [defendant] violated the national standard of care." *Clark v. District of Columbia*, 708 A.2d 632, 635 (D.C. 1997), quoting *Messina*, 663 A.2d at 537. "The failure to prove a standard of care is fatal because, in order to recover damages for negligence, 'the plaintiff must prove that the defendant deviated from the applicable standard of care.' … If the standard itself is not proven, then a deviation from that standard is incapable of proof." *Carmichael*, 577 A.2d at 314, quoting *Toy*, 549 A.2d at 6; *see Clark*, 708 A.2d at 635 (if an expert fails "clearly articulate and [refer to] a standard of care by which the defendant's actions can be measured … a directed verdict for the defendant is properly granted").

Plaintiff's expert takes issue with the training that was provided to employees in the records office at the Department of Corrections. *See id.* at 38:19-39:2. Mr. Lindsay opines that the on-the-job training provided to legal instrument examiners was insufficient, despite the fact that he did not review any training records or manuals. *See id.* at 66:23-24, 100:13-16. Instead, Mr. Lindsay points to the fact that the training at the DOC was different than what was provided at an institution within the Bureau of Prisons where he previously served as Warden. *See id.* at 61:15-62:16. This, however, is insufficient to establish a national standard of care. *See Briggs*, 481 F.3d at 846 ("Expert testimony is not sufficient if it consists merely of the expert's opinion as to what he or she would do under similar circumstances").

It is important to first note that there is no evidence that the institution referenced is comparable to the D.C. Jail. Mr. Lindsay was unaware of how the number of inmates processed

annually from the Metropolitan Detention Center in Brooklyn, New York compares to the number of inmates processed at the D.C. Jail. Lindsay Dep. at 14:15-20. He also admitted he does know how the number of releases from Superior Court compares to the number of releases from the Eastern District of New York. *Id.* at 55:4-11. Nor is he aware of how the District of Columbia's overdetention rate compares to the overdetention rate at this facility. *See* Lindsay Dep. at 73:20-74:9; 97:6-9. Therefore, because he cannot prove this is a comparable institution, he has failed to properly establish that this facility's practice sets forth the national standard of care.

Moreover, even if this were a comparable institution, reference to a single institution is not sufficient to establish a national standard of care. *See Toy,* 549 A.2d 1 (D.C. 1988). In *District of Columbia v. Peters,* 527 A.2d 1269 (D.C. 1987), a police practices expert established a national standard of care where he testified about the training provided by "many police departments" and "[h]e also gave as examples specific law enforcement agencies which provide such training." *Peters*, 527 A.2d at 1273. The expert specifically identified police departments in a broad enough geographical area—Seattle, Tallahassee, Jacksonville, Miami, Los Angeles and Virginia—to establish that the practice was employed in comparable facilities nationwide. *Id.* Additionally, as the expert provided specific examples, "[he] gave the jury a factual basis for determining a standard of care beyond the expert's personal opinion of what he or she would do under similar circumstances." *Toy,* 549 A.2d at 7, citing *Meek v. Shepard,* 484 A.2d 579 (D.C. 1984).

Conversely, in *Toy,* the D.C. Court of Appeals found that the expert had failed to establish the national standard of care when he only made general references to ACA standards and a report by the National Center of Institutions and Alternatives, named only one specific

police department with the relevant practice, and otherwise failed to indicate how many police departments throughout the country utilized the practice. 549 A.2d at 7-8. The Court held that "[o]ne instance of a police department [with the relevant practice] is plainly insufficient to provide a factual basis for an expert opinion that the national standard of care requires police departments" to engage in such practices. *Id.* at 8. Here, like the expert in *Toy*, Mr. Lindsay points to only one institution that provides training allegedly different than what is provided to legal instrument examiners with the Department of Corrections. Mr. Lindsay concedes he is unfamiliar with the training that is provided to legal instrument examiners at any other institution. Lindsay Dep. at 109:8-16. Therefore, there is no basis to find that Mr. Lindsay has established a national standard of care. Consequently, the Court should grant summary judgment to the District as to Plaintiff's negligent supervision and training claim.

**b. Plaintiff Failed to Comply with the Mandatory Notice Requirements.**

Plaintiff's negligent supervision and training claim against the District is barred by D.C. Code § 12-309. In order to maintain any action against the District for unliquidated damages, Plaintiff must satisfy the mandatory notice requirement of D.C. Code § 12-309. Section 12-309 provides in pertinent part that:

> An action may not be maintained against the District of Columbia for unliquidated damages to person or property unless, within six months after the injury or damage was sustained, the claimant, his agent, or attorney has given notice in writing to the Mayor of the District of Columbia of the approximate time, place, cause, and circumstances of the injury or damage.

*See* D.C. Code § 12-309. The requirements of the statute are not mere technicalities. The requirements of § 12-309 are mandatory as a prerequisite to filing suit against the District of Columbia. *Pitts v. Dist. of Columbia*, 391 A.2d 803, 807 (D.C. 1978) (citation omitted); *Brown*

*v. Dist. of Columbia*, 853 A.2d 733, 736 (D.C. 2004); *Cason v. D.C. Dep't of Corrections*, 477 F. Supp. 2d 141, 146 (D.D.C. 2007). Since § 12-309 departs from the common law norm of sovereign immunity by allowing suits against the District, the statute's notice requirements are a mandatory prerequisite to filing a lawsuit against the District. *Blocker-Burnette v. Dist. of Columbia*, 730 F. Supp. 2d 200 (D.D.C. 2010). Indeed, in *District of Columbia v. Dunmore*, 662 A.2d 1356 (D.C. 1995), the D.C. Court of Appeals expressly held that Section 12-309 must be construed narrowly against claimants. *See also Giardino v. Dist. of Columbia*, 252 F.R.D. 18, 23 (D.D.C. 2008) ("a plaintiff bringing claims under the DCHRA for unliquidated damages is not excused from providing notice pursuant to § 12-309").

Plaintiff's negligent supervision and training claim against the District is barred because he failed to provide timely notice of his claim to the Mayor as required by § 12-309. Here, Plaintiff notified the District of his intent to sue for his alleged illegal detention, and specifically indicated in his May 7, 2014 notice letter that "Mr. Smith's liberty was taken from him without Due Process and as a result of the extended unlawful incarceration, Mr. Smith's employer terminated Mr. Smith's employment." *See* May 7, 2014 Letter from David Akulian, Esq. to Mayor Vincent Gray, attached as Exhibit 13. Based on the information provided in the letter, the District had no reason to believe that Plaintiff would file a lawsuit raising negligent supervision and training as his notice letter makes no mention of any such claim. In *Breen v. District of Columbia*, 400 A.2d 1058, 1062 (D.C. 1979), the court granted judgment to the District because Plaintiff's notice letter referred specifically to "a complaint of racial discrimination" but did not include any reference to libel, defamation, or a similar-sounding claim. The Court held that "[t]o hold that notice was proper here would be to frustrate the purposes of § 12-309, namely, to give the District an opportunity to investigate and make timely adjustment of the claim (here, libel)."

*Id.* Similarly, here, Plaintiff specifically raised a due process claim and made no mention of negligence, particularly negligent supervision or training. To allow him to now proceed against the District on his claim for negligent supervision and training would frustrate the purposes of the statute. For that reason, Plaintiff's negligent supervision and training claim against the District should be dismissed. *See Owens v. Dist. of Columbia*, 993 A.2d 1085 (D.C. 2010); *Byrd v. Dist. of Columbia*, 538 F. Supp. 2d 170, 175-76 (D.D.C. 2008) (dismissing claims brought under the DCHRA for failure to provide mandatory notice pursuant to Section 12-309).

**CONCLUSION**

For the foregoing reasons, the Court should grant Defendants' Motion for Partial Summary Judgment.

Respectfully submitted,

KARL A. RACINE
Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General, Civil Litigation Division

/s/ Michael K. Addo
MICHAEL K. ADDO
D.C. Bar No. 1008971
Chief, Civil Litigation Division, Section IV

/s/ Alicia M. Cullen
ROBERT A. DEBERARDINIS, JR.
D.C. Bar No. 335976
ALICIA M. CULLEN
D.C. Bar No.1015227
Assistant Attorney General
441 Fourth Street, NW, Suite 630 South
Washington, DC 20001
(202 724-6642; (202) 442-9840
(202) 741-8895; (202) 715-7721 (facsimile)
robert.deberardinis@dc.gov; alicia.cullen@dc.gov

*Counsel for Defendants*