UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| GREGORY SMITH, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 15-0161 (ABJ) |
| DISTRICT OF COLUMBIA, *et al.*, | ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Gregory Smith, brought this civil rights action under to 42 U.S.C. § 1983 alleging that the District of Columbia Department of Corrections ("DOC") unlawfully detained him for twenty-three days after a court ordered that he was to be released from custody.  Amend. Compl. [Dkt. # 36] at 1.  In connection with a discovery dispute, plaintiff filed a Motion for Costs and Fees against the District, arguing that defendant violated Federal Rules of Civil Procedure 26(a)(1), 28(e), 37(c)(1), and 37(d), and seeking "to recover costs and fees incurred as a result of a misrepresentation by [defendant] about the existence of documents during the course of discovery."  Pl.'s Mot. for Costs & Fees [Dkt. # 39] ("Pl.'s Mot."); Pl.'s Statement of P. & A. in Supp. of Pl.'s Mot. [Dkt. # 39-1] ("Pl.'s Statement") at 1.  Defendant denied violating any discovery rules and argued that any costs and fees incurred by plaintiff "are the normal costs of litigation only to be reimbursed should [p]laintiff prevail, at the end of the case . . . ."  Def. District of Columbia's Mem. of P. & A. in Opp. to Pl.'s Mot. [Dkt. # 40] ("Def.'s Opp.") at 1.

The Court referred the motion to a Magistrate Judge for a decision pursuant to Local Civil Rule 72.2.  Min. Order Referring Case (June 13, 2016).  On December 6, 2016, the Magistrate Judge issued an order granting the motion in part and denying it in part.  Order [Dkt. # 53].  The

Magistrate Judge found that defendant had committed two discovery violations and awarded plaintiff attorneys' fees in the amount of $18,428.30: $12,545.40 for 30.9 hours of Mr. Klaproth's time at $406 per hour, and $5,882.90 for 8.9 hours of Mr. Akulian's time at $661 per hour. Mem. Op. re Pl.'s Mot. [Dkt. # 54] ("Mem. Op.") at 19.

The only objection raised to the Magistrate Judge's ruling relates to the amount of attorneys' fees – in particular, the hourly rate used to calculate the fees. Def.'s Obj. to Magistrate Judge's Dec. 6, 2016 Ruling [Dkt. # 58] ("Def.'s Obj."); Mem. of P. & A. in Supp. of Def.'s Obj. [Dkt. # 58] ("Def.'s Obj. Mem."). Defendant argues that the Magistrate Judge committed clear error when she applied the higher Legal Services Index ("LSI") *Laffey* rates rather than the United States Attorney's Office ("USAO") *Laffey* rates. Def.'s Obj. Mem. at 1–5. Plaintiff contends that the use of the higher rate scale was justified because the case involves complex federal litigation. Pl.'s Resp. to Def.'s Obj. [Dkt. # 59] ("Pl.'s Resp.") at 1–4. Defendant's objections to the Magistrate Judge's ruling are now before the Court.

The Court concludes that the Magistrate Judge committed clear error in calculating the fees, and therefore, it will order defendant to pay plaintiff attorneys' fees corresponding to the rates set forth in the USAO *Laffey* Matrix for a total payment of $15,579.90. While the D.C. Circuit has authorized the use of the higher matrix in complex federal litigation in general, plaintiff has failed to meet his burden to establish that the rates are reasonable in this case in particular, and therefore the Magistrate Judge's determination was contrary to law.

## BACKGROUD

"The *Laffey* Matrix sets out a general guideline for awarding attorneys' fees based on experience." *Salazar ex. rel. Salazar v. District of Columbia*, 809 F.3d 58, 62 (D.C. Cir. 2015). But the rates are thirty years old and must be adjusted for inflation. *Id.* As a result, updated *Laffey*

matrices have been developed, including the two at issue here: (1) the "LSI *Laffey* Matrix," updated in accordance with the Legal Services Index of the Nationwide Consumer Price Index, and (2) the "USAO *Laffey* Matrix," which is maintained by the United States Attorney's Office and adjusts rates to account for inflation by using the All-Items Consumer Price Index for the Washington, D.C. area. *See id.*; *Eley v. District of Columbia*, 793 F.3d 97, 101–02 (D.C. Cir. 2015) (elaborating on the differences between the two matrices).

Plaintiff sought attorneys' fees calculated at the rates set out in the LSI *Laffey* Matrix, pointing out that the use of the rates was affirmed recently by the D.C. Circuit in *Salazar*, 809 F.3d at 62, a case involving federal civil rights litigation. Reply Br. in Supp. of Pl.'s Mot. [Dkt. # 41] ("Pl.'s Reply") at 12–13. Defendant argued that plaintiff's requested rates were "excessive, unreasonable, and would constitute a windfall for [p]laintiff's counsel," and that the Magistrate Judge should calculate the rates based on the USAO *Laffey* Matrix. Def.'s Opp. at 11–14.

In her ruling, the Magistrate Judge stated at the outset that the "district court has broad discretion in determining the size of an expense award under Rule 37," Mem. Op. at 16, quoting *Beck v. Test Masters Educ. Servs., Inc.*, 289 F.R.D. 374, 382 (D.D.C. 2013), and that "the [c]ourt uses the lodestar method, multiplying a reasonably hourly rate by the number of hours expended" to determine the size of the award. *Id.* In reliance upon the holding in *Salazar* that "an award of the LSI-*Laffey* rates in a civil rights action was not an abuse of the [d]istrict [c]ourt's discretion," *id.* at 17, citing *Salazar*, 809 F.3d at 64, the Magistrate Judge found that plaintiff had presented enough evidence to establish that the "LSI-*Laffey* rates are the prevailing rates for this type of complex federal litigation." *Id.* The Magistrate Judge also concluded that defendant "fail[ed] to present sufficient evidence to rebut the reasonableness of the LSI-*Laffey* rates requested by [p]laintiff." *Id.*

Defendant had submitted the Statement of Interest of the United States which the District had previously submitted to the district court in *Eley v. District of Columbia*, 201 F. Supp. 3d 150 (D.D.C. 2016), and which argues that USAO *Laffey* rates should be the highest rates awarded for attorney fees. *See* Mem. Op. at 17; Ex. 2 to Def.'s Opp. [Dkt. # 40-2]. But the Magistrate Judge stated that she would accord the Statement of Interest from *Eley* "relatively little weight" because it "predates *Salazar*" and "deals mainly with rates for fees subject to a fee-shifting statute rather than Rule 37 sanctions . . . ." Mem. Op. at 17. Without other evidence to rebut a finding that the LSI *Laffey* rates were reasonable, the Magistrate Judge exercised her discretion "to award [p]laintiff attorneys' fees corresponding to the hourly rate set forth in the LSI-*Laffey* matrix." *Id.*

Defendant has objected to the Magistrate Judge's decision to apply the hourly rates contained in the LSI *Laffey* Matrix instead of the less generous USAO *Laffey* fee schedule. Def.'s Obj. at 1. It contends that plaintiff did not produce sufficient evidence to establish that the hourly rates were reasonable, and that the Magistrate Judge erred in applying the LSI *Laffey* rate schedule. Def.'s Obj. Mem. at 3–5. The Court agrees. After reviewing the Magistrate Judge's decision under the deferential standard set out by Federal Rule of Civil Procedure 72(a) and Local Civil Rule 72.2(c), the Court concludes that the Magistrate Judge's fee award was clearly erroneous and contrary to law.

## STANDARD OF REVIEW

A court may refer nondispositive matters, including a motion for attorneys' fees, to a Magistrate Judge for resolution pursuant to Federal Rule of Civil Procedure 72(a) and Local Rule 72.2. Fed. R. Civ. P. 72(a); LCvR 72.2(a); *see also New Life Evangelistic Ctr., Inc. v. Sebelius*, 847 F. Supp. 2d 50, 51–52 (D.D.C. 2012). Upon referral, the Magistrate Judge "must promptly conduct the required proceedings and, when appropriate, issue a written order stating the decision."

Fed. R. Civ. P. 72(a); *see also* LCvR 72.2(a).  Once the Magistrate Judge issues her decision, any party may raise objections to that decision within fourteen days "after being served with the order." LCvR 72.2(b); *see also* Fed. R. Civ. P. 72(a).  Failure to enter a timely objection will result in a waiver.  Fed. R. Civ. P. 72(a).

The district court shall review "timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law."  Fed. R. Civ. P. 72(a).  "A court should make such a finding when the court 'is left with the definite and firm conviction that a mistake has been committed.'"  *New Life Evangelistic Ctr., Inc.*, 847 F. Supp. 2d at 53, quoting *Am. Soc'y for Prevention of Cruelty to Animals v. Feld Entm't, Inc.*, 659 F.3d 13, 21 (D.C. Cir. 2011).

## ANALYSIS

An attorneys' fee award for a violation of Rule 37 is calculated using the lodestar method, in which the court multiplies a reasonable hourly rate by a reasonable number of hours expended. *See Weisberg v. Webster*, 749 F.2d 864, 872–73 (D.C. Cir. 1984) (determining a fee for a Rule 37 sanction by applying *Nat'l Ass'n of Concerned Veterans v. Sec. of Def.*, 675 F.2d 1319 (D.C. Cir. 1982), which advocated the use of the lodestar method); *see also Davis v. District of Columbia*, 304 F.R.D. 51, 63 (D.D.C. 2014) ("Generally, the proper method of awarding attorneys' fees for a violation of Rule 37 is the lodestar method . . . ."), quoting *Kornegay v. AT&T*, No. 05-0001, 2008 WL 4482970, at *2 (D.D.C. Sept. 29, 2008).  "When requesting attorneys' fees under Rule

37, the moving party bears the burden of proving that the request is reasonable." *Davis*, 304 F.R.D. at 63.[1]

To determine if a plaintiff has met his burden to show that the requested rate is reasonable, courts usually consider three elements: (1) "the attorneys' billing practices;" (2) "the attorneys' skill, experience, and reputation;" and (3) "the prevailing market rates in the relevant community." *Covington v. District of Columbia*, 57 F.3d 1101, 1107 (D.C. Cir. 1995). After reviewing the evidence plaintiff submitted, the Court is not satisfied that plaintiff has met his burden.

In his declaration in support of his request for attorneys' fees, plaintiff's counsel stated:

> I graduated from law school in 2010. Based on the rate index established by the Legal Service Index update to the Laffey Matrix ("LSI-Laffey Matrix"), my prevailing market rate is $406 per hour. The use of the LSI-Laffey Matrix was recently affirmed by this Circuit. *See Salazar v. District of Columbia*, 809 F.3d 58 (D.C. Cir. 2015). The same as in *Salazar*, this 42 U.S.C. § 1983 action involves complex federal litigation. In addition, my current customary billing rate is $400 per hour.

Decl. of Brendan Klaproth in Supp. of Pl.'s Mot. [Dkt. # 39-14] ("Klaproth Decl.") ¶ 19. The information concerning plaintiff's second attorney is similarly brief and does not even include the reference to a "customary billing rate":

> I graduated from law school in June 2000. Based on the rate index established by the Legal Service Index update to the Laffey Matrix ("LSI-Laffey Matrix"), my prevailing market rate is $661 per hour.

---

1 The Magistrate Judge suggested that the standard for awarding attorneys' fees under Rule 37 may be different from the rules that apply to awarding attorneys' fees under a fee-shifting statute. *See* Mem. Op. at 17 (giving "little weight" to the United States's Statement of Interest from the district court decision in *Eley* because it dealt "mainly with rates for fees subject to a fee-shifting statute rather than Rule 37 sanctions"). But the test in both situations is practically identical, and the Magistrate Judge relied heavily on the decision in *Salazar*, 809 F.3d 58, which dealt with an attorneys' fee award under a fee-shifting statute – 42 U.S.C. § 1988 – and not Rule 37.

Decl. of David Akulian in Supp. of Pl.'s Mot. ("Akulian Decl.") [Dkt. # 39-15] ¶ 2 & n.1. So with respect to the first prong of the necessary showing – the attorneys' billing practices – the evidence is quite thin for one attorney and completely lacking for the other.

A plaintiff must also provide the Court with information concerning the attorneys' experience, skill, and reputation. *Covington*, 57 F.3d at 1107. Here, this evidence is almost non-existent. The declarations state nothing more than the year that each attorney graduated from law school. Klaproth Decl. ¶ 19; Akulian Decl. ¶ 2. But courts demand more – there must be some description of the attorney's experience with specific types of cases that would enable the court to evaluate what that attorney is bringing to the table in order to justify the hourly rate. *See Covington*, 57 F.3d at 1110–11 (finding that plaintiffs "clearly met their burden" where they "submitted data demonstrating their attorneys' experience in the legal profession and in litigating complex federal court cases, as well as information probative of their attorneys' skill and reputation); *Young v. Sarles*, 197 F. Supp. 3d 38, 46 (D.D.C. 2016) (concluding plaintiff satisfied his burden by submitting "affidavits from each of his attorneys describing their experience and expertise, as well as their typical billing practices in litigating civil rights cases).

This deficiency also affects plaintiff's ability to address the third element: the requirement that a fee applicant must "produce satisfactory evidence – *in addition to* the attorney's own affidavits – that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Eley*, 793 F.3d at 100, quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984) (emphasis in original). In *Eley*, the Court of Appeals overturned a district court's decision to apply the higher LSI *Laffey* rates in a case involving the Individuals with Disabilities Education Act ("IDEA") because plaintiff had not provided the court with sufficient evidence to support the application of the higher rates.

*Id.* at 104. The only evidence that had been presented was: (1) the LSI *Laffey* Matrix; (2) a declaration from Michael Kavanaugh, Ph.D, the economist who developed the LSI *Laffey* Matrix; and (3) the plaintiff's lawyer's verified statement that he charged his paying clients the rates in the LSI *Laffey* Matrix. *Id.* The Circuit found that the plaintiff had not submitted any evidence to show that LSI *Laffey* rates were in line with those prevailing rates in the legal community for "'*similar services*,' *i.e.*, IDEA litigation." *Id.* (emphasis in original), quoting *Covington*, 57 F.3d at 1109. Although the court made clear that it was not deciding whether IDEA litigation is sufficiently "complex" to use either version of the *Laffey* Matrix, it concluded that regardless, "the obligation was [the plaintiff's] to demonstrate that her suggested rates were appropriate" and that she had not done so. *Id.* at 105.

Later, in *Salazar*, the Court of Appeals did find the record to be sufficient to support the use of the LSI *Laffey* Matrix at the conclusion of a civil rights class action. 809 F.3d at 64. The only issue in that case was whether the plaintiff had satisfied the third element – the prevailing market rate – and the plaintiff submitted: (1) an affidavit from Dr. Kavanaugh explaining "why the LSI is a better measure of the change in prices for legal services in Washington, D.C. than the USAO update to the *Laffey* Matrix;" (2) billing rate tables "demonstrating the difference between average national law firm rates and the LSI update to the *Laffey* Matrix, as well as the difference between average national law firm rates and the USAO update to the *Laffey* Matrix;" and (3) a survey showing the rates for partners in Washington, D.C. on the high end of the market and how those rates far exceeded the rates in the LSI update. *Id.* at 64–65.

The Court of Appeals found this showing sufficient to justify the district court's exercise of discretion to select the LSI *Laffey* rates, and it explained that the holding was consistent with *Eley*:

> In *Eley*, we vacated a district court's fee award based on evidence submitted by the District tending to show that, in the particular context of IDEA claims, there is a submarket in which attorneys' hourly fees are generally lower than the rates in either of the *Laffey* Matrices. In this case, by contrast, the District identifies no such submarket, instead acquiescing in the notion that the litigation at issue qualifies as complex federal litigation (as to which the *Laffey* Matrices apply).

*Salazar*, 809 F.3d at 64 (internal citation omitted).

As one district court has observed:

> [T]he D.C. Circuit's suggestion in these two recent opinions that certain categories of federal litigation fall into distinct and discernable submarkets of legal services, in which prevailing market rates applicable to the general run of 'complex federal litigation' may not apply, presents potential new complications for courts, as well as litigants, seeking to calculate reasonable fee awards.

*Makray v. Perez*, 159 F. Supp. 3d 25, 36 (D.D.C. 2016).

It is fair to say that there are significant differences between the section 1983 class action litigation involved in *Salazar* and the claim brought on behalf of a single plaintiff here. Indeed, plaintiff initially brought his complaint, which includes the section 1983 claim and two common law tort claims, in the Superior Court of the District of Columbia, and it was defendant that removed it to federal court. Notice of Removal [Dkt. # 1]. But it is not necessary to decide whether this action is properly characterized as "complex federal litigation," or *Salazar*-level "complex federal litigation," if such a category exists, in order to rule on the issue presented here because both sets of *Laffey* rates apply to "complex federal litigation" no matter which method of adjusting for inflation is applied. *See Salazar*, 809 F.3d at 64.

The problem here is similar to the problem identified in *Eley*: the failure to come forward with evidence "that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." 793 F.3d at 100, quoting *Blum*, 465 U.S. at 895 n.11. Plaintiff has simply lifted Dr. Kavanaugh's affidavit

9

from the *Salazar* case and thus there is nothing in the record to indicate that the economist was offering an opinion about cases like this one, or that he had given any consideration to matters filed in Superior Court. *See Prunty v. Vivendi*, 195 F. Supp. 3d 107, 115–16 (D.D.C. 2016) ("It may be that, ordinarily, a civil rights or copyright case would rise to the level of 'complex federal court litigation' that would justify application of the LSI *Laffey* Matrix approved in *Salazar*. But absent actual *evidence* that establishes that to be so, the court declines to apply the higher rates in this case. Instead, the USAO *Laffey* Matrix provides an appropriate benchmark by which to measure the prevailing market rate in this case.").

More important, without any evidence in the record establishing where these attorneys fall on the spectrum of skill and experience, or the type of legal services that they typically provide, there is no basis in the record to conclude that the LSI *Laffey* rates justified by the expert in *Salazar* as "prevailing in the community" are for services similar to those for which attorney Klaproth charges his customary rate, or that they are charged by lawyers with comparable resumes.[2]

What the Magistrate Judge did in this case was to treat the LSI *Laffey* rates as the presumptive rates for civil rights cases in federal court unless rebutted, but the *Salazar* opinion did not go that far. While it upheld a district court's approval of the higher matrix based on the record before it in that case, it did not dispense with the three-pronged test for establishing the reasonableness of a requested rate in any individual future case.

---

2   The showing here does not measure up to the evidence found by the court to be sufficient to justify the higher rates in *Makray*: (1) a declaration from plaintiff's counsel describing his extensive experience; (2) a declaration from a Washington-based attorney averring that plaintiff's requested reimbursement rate was reasonable and consistent with prevailing market rates in the area; (3) a declaration from a Washington-based civil rights litigator asserting that the USAO *Laffey* rates are below the prevailing market rate for this kind of work in federal court; and (4) "evidence comparing the results of a 2014 National Law Journal billing survey, which includes rate data for twelve national law firms based in Washington, D.C., to the plaintiff's requested rate." 159 F. Supp. 3d at 47–48.

Here, as in *Prunty*, plaintiff failed to present sufficient evidence to "allow the court to evaluate the reasonableness of [the] rates in this case." 195 F. Supp. 3d at 115. And therefore, the Magistrate Judge's decision to apply the LSI *Laffey* Matrix was clearly erroneous and contrary to law. Because plaintiff has not met his initial burden of justifying the reasonableness of the rates applied, the Court will modify the Magistrate Judge's decision and apply the USAO *Laffey* Matrix rates.[3]

Utilizing that standard, the Court finds that plaintiff is entitled to $15,579.90 in fees: $11,494.80 for 30.9 hours of Mr. Klaproth's time at $372 per hour, and $4,085.10 for 8.9 hours of Mr. Akulian's time at $459 per hour. It is hereby

**ORDERED** that the Magistrate Judge's Report and Recommendation [Dkt. # 54] is modified; and it is

**FURTHER ORDERED** that the Court awards plaintiff attorneys' fees in the amount of $15,579.90.

**SO ORDERED**.

/s/ Amy B. Jackson

AMY BERMAN JACKSON
United States District Judge

DATE: April 6, 2017

---

[3] When the fee-requesting party has not presented sufficient evidence to establish the prevailing market rate based on the LSI *Laffey* Matrix, courts often apply the USAO *Laffey* Matrix rates. *See Prunty*, 195 F. Supp. 3d, 115 ("Given the near absence of evidence submitted by [d]efendants to establish the prevailing market rate here, the court will rely on the more conservative USAO *Laffey* Matrix to evaluate the reasonableness of Counsel's proposed hourly rates."); *Eley*, 201 F. Supp. 3d at 163 (holding that when the fee applicant does not meet the evidentiary burden, reimbursement based on the USAO *Laffey* Matrix appropriate).