# EXHIBIT E

to

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF'S CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT ON LIABILITY**

# Deposition of Robilyn Brown
-
(December 14, 2015)

1            UNITED STATES DISTRICT COURT

2         FOR THE DISTRICT OF COLUMBIA

3 - - - - - - - - - - - - - - -x

4  GREGORY SMITH,          :

5        Plaintiff,     :

6    v.                  :  Civ. No. 1:15-cv-161 (ABJ)

7  DISTRICT OF COLUMBIA,   :

8  et al.,               :

9        Defendants.    :

10 - - - - - - - - - - - - - - -x

11

12         Deposition of ROBILYN BROWN

13            Washington, D.C.

14        Monday, December 14, 2015

15             1:34 p.m.

16

17

18

19

20 Job No.: 99720

21 Pages: 1 - 61

22 Reported By: Victoria Lynn Wilson, RMR, CRR

1    you do not understand a question, do you agree to let

2    me know?

3        A   Yes.

4        Q   And so that we agree, then, that if you

5    answer a question, you understood it?

6        A   Yes.

7        Q   And if at any point you need to take a

8    break, just let me or your attorney know, whether it

9    be for water, bathroom.  That's not a problem.

10       A   Okay.

11       Q   Okay?

12       A   Thank you.

13       Q   So where do you currently work, Ms. Brown?

14       A   D.C. Jail inmate records office for the

15   Department of Corrections.

16       Q   And what's your position there?

17       A   Supervisory legal instruments examiner.

18       Q   And how long have you been the supervisory

19   legal instruments examiner -- examiner?

20       A   Since June the 30th, 2013.

21       Q   Good memory.  And how long have you been

22   with the D.C. Jail as an employee?

```
 1          A    Since 12 of '06.
 2          Q    What was your position prior to being a
 3    supervisory legal instrument examiner?
 4          A    A legal instruments examiner.
 5          Q    And did you begin as a legal instruments
 6    examiner in December 2006?
 7          A    Yes.
 8          Q    And what's your address?
 9          A    Home address?
10          Q    Yes.
11               MS. COPPOCK:  I'm going to have you give
12    your work address.  We will be informed if she moves
13    and we will let you know.
14               MR. KLAPROTH:  Okay.  So long as you can
15    provide, you know, if she's no longer employed.
16               MS. COPPOCK:  Absolutely.
17          Q    So that's fine.  You don't have to give your
18    address.
19               Do you anticipate changing jobs in the next
20    year?
21          A    No.
22          Q    Okay.  That's not a trick question to get
```

1 documents.
2     Q    What are the other documents?
3     A    A prisoner return form.
4     Q    Anything else?
5     A    A commitment disposition, a Form 41.
6     Q    What's Form 41?
7     A    Just a reprimand document to hold a prisoner
8 in jail by the U.S. Marshals.
9     Q    All right.  Is it accurate to say that every
10 prisoner that returns from court, the Superior Court,
11 will either have a J&C, a release, a prisoner return,
12 a commitment disposition, or a Form 41?
13     A    That's correct.
14     Q    And what would happen if a prisoner returned
15 without any of those documents?
16     A    He cannot come into the jail.
17     Q    What's a prisoner return?  What is that for?
18     A    It's just the form stating when the
19 individual is to return back to court.
20     Q    And if you receive that form, D.C. Jail can
21 hold the individual --
22     A    Yes.

1    Q   -- are you referring to the work of the
2    legal instrument examiners?
3    A   Yes, the workload.
4    Q   And their work includes intake, court
5    returns, releases, and sentence computations?
6    A   That's correct.
7    Q   As the supervisory legal instrument
8    examiner, do you process intake, court returns,
9    releases, and/or sentence computations?
10   A   Yes.
11   Q   So in addition to managing the LIEs, you
12   will also do the processing?
13   A   I kick in to help, yes.
14   Q   All right.  So how does a release order come
15   into the records office?
16   A   Via electronic email.  Electronically.
17   Q   You're referring to the TMS system?
18   A   No.  It will come in electronically through
19   the -- via the email, through the email.  It could be
20   faxed over or it can be hand brought in.
21   Q   And who's it faxed by?
22   A   Quality assurance at D.C. Superior Court.

1        Q    And who would it be emailed by?

2        A    Quality. It usually -- it comes from the

3 courts.

4        Q    And the only interface that the records

5 office has is with quality --

6        A    Assurance, yes, and U.S. Marshals when

7 they're hand brought to the person at our satellite

8 office.

9        Q    In what circumstances would a U.S. Marshal

10 hand deliver?

11        A    When he's bringing an inmate from the

12 courtroom.

13        Q    And who is responsible for transporting an

14 inmate from the court to the D.C. Jail? Is it

15 transport or is it the U.S. Marshal?

16        A    Both.

17        Q    Does transport ever bring -- hand deliver a

18 release order?

19        A    At the end, they do a last little envelope

20 that holds all documents.

21        Q    At the end of what?

22        A    The end of the day. The end of -- yes.

1  Q  So they'll come by with a pile of all the
2  documents from that day?
3  A  From what was -- yes.  Yes.
4  Q  And is that just as a -- to double-check to
5  make sure all the documents were transported?
6  A  That's correct.
7  Q  And transport does that every day?
8  A  Every day.
9  Q  And transport takes those documents from the
10 DC Superior Court --
11 A  Uh-huh.
12 Q  -- and delivers them to the records office?
13 A  That's correct.
14 Q  Is there any factor that determines whether
15 the U.S. Marshal or transport is responsible for
16 transporting an inmate from court to the jail?
17 A  I'm not sure.
18 Q  Does the records office also receive court
19 documents such as release orders through the system
20 referred to as "TMS"?
21 A  Yes.
22 Q  All right.  So -- and correct me if I'm

1   wrong but this is just my understanding right now.
2   The records office receives a court document, such as
3   a release order, in potentially three formats:
4   through the TMS system, it's brought in by hand, and
5   it's faxed or emailed; is that correct?
6       A   No.
7       Q   Okay.  Can you correct me.
8       A   Okay.  So the documents either come from the
9   marshals, electronically through the email, or via the
10  fax.  The TMS is the creation of a legal instruments
11  examiner at our office at the Superior Court.  So in
12  order for it to go into TMS, a legal instruments
13  examiner has to input that document into TMS.
14      Q   So do all those three -- those three
15  channels, so to speak -- documents by hand, LIE puts
16  in TMS, and electronically -- do those each happen for
17  each court document?
18      A   Yes.
19      Q   And then on top of that, transport will
20  bring all the documents at the end of the day;
21  correct?
22      A   That's correct.

1   Q   So, potentially, the records office could
2   receive four copies of the same document?
3   A   That's correct.
4   Q   So what triggers an LIE or supervisory LIE
5   to begin processing a court document, such as a
6   release order?  Is it when they receive it from any
7   one of those four?
8   A   That's correct.  Yes.  What triggers it,
9   yes.
10  Q   And what's typically the most common way
11  that a legal instrument examiner would receive --
12  A   By hand from the marshals.
13  Q   So the marshal would hand it directly to an
14  LIE?
15  A   Uh-huh.
16  Q   And is there a system to assign who
17  processes what or is it just whoever the marshal hands
18  it to?
19  A   It's whoever the marshal -- the marshals
20  give it to the LIE at our satellite office.  There's
21  only one LIE at the satellite office.
22  Q   Where is the satellite office?

1     A    In Superior Court, D.C. Superior Court.
2     Q    I see.  So the marshal only hand-delivers to
3  the LIE at the Superior Court, not to an LIE at D.C.
4  Jail.
5     A    That's correct.
6     Q    And then the LIE at the satellite office,
7  the Superior Court, scans that document?
8     A    That's -- uh-huh.
9     Q    Uploads it to the TMS system?
10    A    Correct.  Yes.
11    Q    And after that occurs, what's the next step
12 in the process?
13    A    An LIE from D.C. Jail will select that
14 document and they'll begin the process.
15    Q    So once the LIE at the Superior Court
16 uploads the document to TMS, it then appears on the
17 computer?
18    A    It's like a pull.  It's a -- TMS is a
19 transaction management system, so they'll click "Next"
20 and it will pull the next priority.
21    Q    I see.  What does the LIE at the D.C. Jail
22 do once they pull the court document?

1   A Pull the institutional record.

2   Q And that's a hard copy?

3   A That's correct.

4   Q And what do they do with the institutional

5 record?

6   A Review it and compare all documents.

7   Q And what are they looking for in the

8 institutional record?

9   A The commitment; if they received a release

10 order, just to make sure the release order matches the

11 commitment by PDID number, inmate's name, date of

12 birth, and case number.

13   Q All right. So after checking the

14 institutional record where they're checking the

15 identifying information, if that's correct; right?

16   A Correct.

17   Q What's the next step for the LIE?

18   A Depending on what they're processing with

19 it.

20   Q Let's say a release order.

21   A Okay. So they would match the document, go

22 into the internal system called JACCS, assure that

21

1     everything that's in the hard copy is in the
2     institutional record is posted, and then they would
3     look at the release order and go into JACCS and close
4     out that specific case as directed by the order of the
5     Court.
6          Q   So when you say they match the document,
7     what do you mean by that?
8          A   They compare every specific -- specifics, as
9     I stated earlier, with the -- from the release order
10    to the committing document to make sure everything
11    matches.
12         Q   So if you're comparing the release order to
13    the committing document, are you just looking at the
14    case number, the prisoner ID, and their name?
15         A   No, you're looking at the prisoner's PDID
16    number, the case number, the date of birth, the -- and
17    then on a release order, you're going to cross and
18    just make sure the judge has ordered this individual
19    to be released on this day, on that specific day.
20         Q   And what do you check to ensure that the
21    judge did release the individual on that day?
22         A   It will read it on the commitment.  It will

1     A   They close it out in JACCS.  They scan it
2  into our internal system called Paper Clips.
3     Q   And you said the internal system is called
4  "Paper Clips"?
5     A   Paper Clips, it's a scanning -- it's where
6  we hold documents.  It's like a cloud.
7     Q   I see.  And does that get saved, a copy of
8  the release order get saved, in JACCS or it just gets
9  saved in Paper Clips?
10    A   Just in Paper Clips.
11    Q   And every document that is received from the
12 Court by an LIE has to get scanned into Paper Clips?
13    A   That's correct.
14    Q   And does a copy of the -- of the document
15 issued from the Court, such as a release order, does a
16 hard copy get printed and put into --
17    A   The institutional file.
18    Q   -- the institutional file?
19    A   That's correct.
20    Q   So does each prisoner have a file in Paper
21 Clips?
22    A   Yes.

1           (DC Exhibit 2, previously marked, is
2    attached to the transcript.)
3       A   I'm looking at page 9.  First off, have you
4    seen this document before?
5       A   No.
6       Q   Okay.  I'll represent to you what this is.
7    It's the District of Columbia's responses to
8    plaintiff's interrogatories that we received from
9    counsel.
10          So if you could just look at page 9, I just
11   have a question in here.  Looking at the
12   second-to-last sentence on the bottom of the page,
13   it's the first full sentence on that line that states,
14   "On April 10th."  Do you see that?
15      A   Yes.
16      Q   It states, "On April 10, 2014, a Court
17   Ordered Release was received from D.C. Superior Court
18   on Case Number 2012 CMD 007806 and Inmate Gregory
19   Smith was released from DOC custody to self-custody.
20   The release was signed by DOC Legal Instrument
21   Examiner Fred Thompson and Supervisory Legal
22   Instrument Examiner Robilyn Brown."  Do you see that?

1      A   Yes.
2      Q   Do you have any reason to believe that you
3  did not sign the release referenced in that
4  interrogatory?
5      A   No.
6      Q   So when you perform a release as a
7  supervisory legal instrument examiner, what is your
8  role?
9      A   To verify and -- to verify the initial --
10 yeah, the second I like to verify everything the
11 initial preparer stated and seen was correct.
12     Q   Is it fair to say it's double-checking the
13 work of the LIE?
14     A   Yes.  Yes.
15     Q   And that only happens after the LIE actually
16 makes the determination that the prisoner should be
17 released; correct?
18     A   Yes.
19     Q   While performing that verification, do you
20 review the institutional file?
21     A   Yes.
22     Q   And are you required to review MyJUSTIS?

1  individual is being released; correct?
2      A   Yes.
3      Q   And you also have to review their
4  institutional file?
5      A   Yes.
6      Q   So when you're processing a release as a
7  supervisory legal instruments examiner and there is a
8  release order contained in the institutional file that
9  hasn't been processed, what would you do?
10     A   First, I would -- could you reframe that
11 before I answer?
12     Q   So if, while you're doing your review of the
13 release authorization form and you're reviewing the
14 institutional file, if you find in the institutional
15 file a release order that was not processed
16 previously, say it was processed -- a release order
17 from two weeks prior and it was never processed, do
18 you have any -- is there anything that you're required
19 to do as part of your job?
20         MS. COPPOCK:  Objection to form.  Go ahead.
21     A   I would make notification to my -- my
22 supervisor.

1  Q   And who's your supervisor?

2  A   Jeanette Myrick.

3  Q   And you're required to do that?

4  A   Yes.

5  Q   And have you ever done that on any occasion?

6  A   No.

7  Q   And do you know if there's a policy for what
8  Jeanette Myrick has to do with that information after
9  you provide it to her?

10 A   I'm not sure.  I don't know, no.

11 Q   Looking at DC 5, and please take your time
12 to review this, can you review this document and let
13 me know if this is the institutional file that you
14 reviewed on April 10th, 2014, when you released?

15 A   No, I'm not sure.  It's too much going on.
16 I can't.  And to be honest, I can't remember.

17 Q   Okay.  If I can point you to, in the same
18 document, DC Exhibit 5, the very bottom of the page,
19 do you see where it says, "GSmith DC," and then
20 there's page numbers after it?  I'm looking at GSmith
21 DC 000039.

22 A   Oh.  39.  Okay.  Okay.  I'm on the same

1      A   That's correct.

2      Q   And it's for case 2014 CMD 004452; correct?

3      A   That's correct.

4      Q   And looking at GSmith DC 000052, this is a release order; correct?

6      A   Yes.

7      Q   And the case is 2012 CMD 007806?

8      A   That's correct.

9      Q   And the Judge Juliet J. McKenna signed the order --

11     A   Yes.

12     Q   -- on March 18, 2014?

13     A   That's what it says, yes.

14     Q   And it's contained in the institutional file?

16     A   Yes.

17     Q   So do you know which case Mr. Smith was being detained on when you completed the release authorization form?

20     A   I'm still not sure. I know he was detained on 2012 CMD 007806. That was the only pending case when I received the record.