## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| _____ ) | |
| GREGORY SMITH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 15-CV-161 (ABJ) |
| ) | |
| DISTRICT OF COLUMBIA, *et al.*, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

### DEFENDANT DISTRICT OF COLUMBIA'S BENCH MEMORANDUM

Pursuant to the Court's February 14, 2019 Order, Defendant District of Columbia (the District), through counsel, submits the following bench memo directing the Court to specific cases relevant to the District's argument that Plaintiff must establish deliberate indifference as part of his Section 1983 case predicated on a custom and practice.

### BACKGROUND

The genesis of the Court's Order was the discussion that transpired during the February 14, 2019 Pretrial Conference regarding how Plaintiff could establish a Section 1983 claim against the District.  It is well settled that there are a number of ways in which a "policy" can be set by a municipality to cause it to be liable under § 1983:  (1) "the explicit setting of a policy by the government that violates the Constitution," (2) "the action of a policy maker with the government," (3) "the adoption through a knowing failure to act by a policy maker of actions by his subordinates that are so consistent that they have become custom," or (4) "the failure of the government to respond to a need (for example, training of employees) in such a manner as to

show deliberate indifference to the risk that not addressing the need will result in constitutional violations." *Baker v. District of Columbia*, 326 F.3d 1302, 1306 (D.C. Cir. 2003).

Here, Plaintiff is proceeding under the third theory and therefore, as stated by the Court, he must prove that "DOC has a practice of receiving release orders by multiple means, and if so, whether this allegedly haphazard system led to plaintiff's overdetention." *Smith v. District of Columbia*, 306 F.Supp.3d 223, 250 (D.D.C. 2018).  At the Pretrial Conference, counsel for the District contended that Plaintiff must prove more than the fact that DOC has such a practice, but that the practice was constitutionally infirm in that the District knew or should have known that its practice of receiving release orders was likely to result in overdetentions (*i.e.* DOC was deliberately indifferent to the likelihood that individuals such as the Plaintiff would be overdetained at the jail).

In response, the Court stated it believed the District had conflated alternatives three and four of *Baker* and that Plaintiff need not demonstrate deliberate indifference.  This, in turn, led to the Court's request for case citations as to the District's position.  Accordingly, the District herein provides to the Court with a brief exposition, as well as relevant quotations and case citations.

## EXPLANATION AND CASE LAW

The District submits that the case law makes clear that there is little or no conceptual difference between (3) "the adoption through a knowing failure to act by a policy maker of actions by his subordinates that are so consistent that they have become custom," and (4) "the failure of the government to respond to a need (for example, training of employees) in such a manner as to show deliberate indifference to the risk that not addressing the need will result in constitutional violations."  The "knowing failure to act" incorporated in the third *Baker* theory

restates what amounts to deliberate indifference.  *See Jones v. Horne*, 634 F.3d 588, 601 (D.C. Cir. 2011) (deliberate indifference is "determined by analyzing whether the municipality knew or should have known of the risk of constitutional violations, but did not act").  Regardless of the theory of municipal liability, deliberate indifference is the minimum degree of culpability. *See Bd. of County Comm'rs v. Brown,* 520 U.S. 397, 407 (1997).

The District further relies upon the following cases:[1]

- ***City of Canton v. Harris,* 489 U.S. 378, 390 (1989)**

Only if a municipal policy was "so likely to result in the violation of constitutional rights," and the need to change the policy "so obvious," could "policymakers of the city . . . have been deliberately indifferent to the need."

- ***City of St. Louis v. Praprotik,* 485 U.S. 112, 128 (1988)**

The city cannot be held liable under § 1983 unless respondent proved the existence of an unconstitutional municipal policy.

- ***Connick v. Thompson,* 563 U.S. 51, 60-61 (2011)**

Plaintiffs who seek to impose liability on local governments under § 1983 must prove that "action pursuant to official municipal policy" caused their injury.  *Monell,* 436 U.S. at 691, 694.  Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law.  *See id.*; *Pembaur,* 475 U.S. at 480-81; *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 167–168, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).  These are "action[s] for which the municipality is actually responsible."  *Pembaur,* 475 U.S. at 479-80.

---

[1] The case cites represent quotations/language directly from the decisions.

- ***Amnesty Am. v. Town of W. Hartford,* 361 F.3d 113, 125-25 (2d Cir. 2004)**

For the purpose of Section 1983, a municipality is not vicariously liable for the acts of its employees. *Coon v. Town of Springfield,* 404 F.3d 683, 686–87 (2d Cir. 2005) (citing *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)). Although there are several different ways of establishing municipal liability under Section 1983, the two relevant to this case are proving that (1) the municipality is aware that its policy for handling a given situation, although not unconstitutional in itself, may be applied unconstitutionally, but nevertheless consciously chooses not to train its employees in proper application of the policy; or (2) the municipality's practice, as opposed to its formal policy, is to engage in the constitutional violation at issue.

- ***Berry v. Baca,* 379 F.3d 764 (9th Cir. 2004)**

In order to hold Baca liable under § 1983, plaintiffs must demonstrate that "'action pursuant to official municipal policy of some nature caused a constitutional tort.'" *Brass,* 328 F.3d at 1198 (quoting *Monell,* 436 U.S. at 691, 98 S.Ct. 2018). We have stated that "a local governmental body may be liable if it has a policy of inaction and such inaction amounts to a failure to protect constitutional rights." *Oviatt v. Pearce,* 954 F.2d 1470, 1474 (9th Cir.1992) (citing *City of Canton v. Harris,* 489 U.S. 378, 388, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)). However, the policy of inaction must be more than mere negligence, *see Daniels v. Williams,* 474 U.S. 327, 333–36, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); it must be a conscious or deliberate choice among various alternatives. *See Lee v. City of Los Angeles,* 250 F.3d 668, 681 (9th Cir. 2001).

In order to impose liability based on a policy of deliberate inaction, the "plaintiff must establish: (1) that he possessed a constitutional right of which he was deprived; (2) that the

municipality had a policy (3) that this policy 'amounts to deliberate indifference' to the plaintiff's constitutional right; and (4) that the policy [was] the 'moving force behind the constitutional violation.'" *Oviatt,* 954 F.2d at 1474 (quoting *City of Canton,* 489 U.S. at 389–91, 109 S.Ct. 1197).

Baca concedes that he knew that the implementation of the County's policies was resulting in delays of up to 48 hours. Therefore, if the delays were not reasonably justified, the § 1983 claim against the County has merit, because the County was continuing to adhere to a policy that it knew resulted in unlawful detentions without reasonable cause. *See Bd. of County Comm'rs v. Brown,* 520 U.S. 397, 407, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997). We find that this question of reasonableness is properly conceived of as a jury determination.

- *Page v. Mancuso,* **999 F. Supp. 2d 269 (D.D.C. 2013)**

When a plaintiff seeks to establish "custom and policy" municipal liability under § 1983 in the absence of an express policy, she must allege "concentrated, fully packed, precisely delineated scenarios" as proof that an unconstitutional policy or custom exists. *Parker,* 850 F.2d at 712 (internal quotations & citations omitted). To clear this high hurdle, plaintiffs ordinarily couch "custom or practice" liability on allegations of "practices so persistent and widespread as to practically have the force of law." *Connick,* 131 S.Ct. at 1359 (citations omitted); *see also St. Louis v. Praprotnik,* 485 U.S. 112, 130, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988) (recognizing that "if a series of decisions by a subordinate official manifested a 'custom or usage' of which the supervisor must have been aware" then "the supervisor could realistically be deemed to have adopted a policy"); *Jones v. Horne,* 634 F.3d 588, 601 (D.C. Cir. 2011) (same); *Warren v. District of Columbia,* 353 F.3d 36, 39 (D.C. Cir. 2004) (same). In addition, a complaint must also state facts "from which a link between [the] alleged misconduct and a D.C. policy, custom,

or practice may be reasonably inferred." *Brown v. Wilhelm,* 819 F.Supp.2d 41, 44 (D.D.C.2011).

This causal link requires facts suggesting that "the individual wrongdoer ... acted pursuant to an

unconstitutional policy, practice[,] or custom promulgated or sanctioned by the municipality."

- *Turner v. Corrections Corporation of America,* 56 F. Supp. 3d 32, 35-36 (D.D.C. 2014)

In the Complaint, Turner states only, "[T]he above institution held my person beyond

release on documentation, violating my constitutional and civil rights [*sic* ]." Compl. at 1. This is

simply not enough.  Not only does Plaintiff fail to allege the existence or operation of any policy

that caused his prolonged incarceration, but he never even provides any cause for such

overdetention.  Nor does he plead any facts that support an inference that CCA was deliberately

indifferent to the risk of a violation of his constitutional rights.  *See Smith,* 674 F. Supp. 2d at

206. Plaintiff has not, for example, alleged that CCA was aware of the possibility of

overdetention, but decided to do nothing or that it failed to adequately train or supervise its

employees. *See Connick,* 131 S.Ct. at 1360.  Even if CCA acted improperly in regard to

Turner's release, that injury alone is insufficient to create § 1983 liability for the corporation.

Because there are no allegations of an unconstitutional CCA policy or the company's deliberate

indifference, the Court finds that Turner has insufficiently pled his § 1983 claim, which will be

dismissed without prejudice.

- *Ryan v. District of Columbia,* 306 F. Supp. 3d 334 (D.D.C. 2018)

When a plaintiff seeks to establish municipal liability in the absence of an explicit policy,

he must allege "concentrated, fully packed, precisely delineated scenarios as proof that an

unconstitutional policy or custom exists." *Page v. Mancuso*, 999 F.Supp.2d 269, 284 (D.D.C.

2013) (internal quotation marks and citation omitted). "To clear this high hurdle, plaintiffs

ordinarily couch 'custom or practice' liability on allegations of practices so persistent and

widespread as to practically have the force of law." *Id.* (internal quotation marks and citation omitted); *see also Coleman*, 828 F.Supp.2d at 92 ("This must be a persistent, pervasive practice of the city officials, which although not officially adopted, was so common and settled as to be considered a custom or policy." (alteration, internal quotation marks, and citation omitted)).

This Court easily concludes that Ryan has failed to provide enough evidence to demonstrate that the District had a municipal custom or policy of retaliating against employees for exercising their First Amendment rights. Indeed, Ryan makes only the conclusory allegation that a policy of retaliating against employees for exercising their First Amendment right to free speech exists (*see, e.g.*, Pl.'s Opp'n at 53), and he has not "pointed to any other employee who suffered similar retaliation[,]" nor has he demonstrated that the alleged retaliatory actions were widespread or pervasive. *Jones v. Quintana, 658 F.Supp.2d 183, 197 (D.D.C. 2009); see also DuBerry v. District of Columbia, 582 F.Supp.2d 27, 39 (D.D.C. 2008)* (finding insufficient evidence of a widespread custom, practice, or policy where the plaintiff failed to "produce[ ] any evidence that the Department's alleged discriminatory employment practices impacted a single employee or prospective employee other than himself"). In fact, Ryan does not even allege that "some, most, or all FEMS members making protected speech experience unlawful deprivations of their first amendment rights[,]" *Coleman*, 828 F. Supp. 2d at 93–94 (internal quotation marks and citation omitted), much less provide any evidence to this effect. *See Page*, 999 F. Supp. 2d at 285 ("[The plaintiff] provides no information about whether D.C. jail officials subjected any *other* individuals to strip searches in the absence of reasonable suspicion in the manner he describes, nor does he even allege that the D.C. jail had been conducting these strip searches on a regular basis." (emphasis in original) ).

\*\*\*

To the extent that Ryan argues Ellerbe "did nothing" to stop the alleged retaliatory actions, "condoned" those actions, and "fail[ed] to intervene in any way" (Pl.'s Opp'n at 52), neither Ellerbe nor any of the other individuals at FEMS were policymakers whose conduct can be attributed to the District for municipal liability purposes. (*See supra* Part III.A.1.) And Ryan has not pointed to *any* evidence that the District, the Mayor, the Council, or anyone with final policymaking authority knew or should have known that Ryan's constitutional rights were being violated.[4] Ryan certainly has not shown that the District was "faced with actual or constructive knowledge that its agents [ ] probably violate constitutional rights[,]" and nonetheless "adopted a policy of inaction[,]" as is required for a municipality to be held liable based on its deliberate indifference. *Hamilton*, 852 F.Supp.2d at 150 (alterations, internal quotation marks, and citation omitted).

\*\*\*

As a general matter, "proof of a single incident of unconstitutional activity is not sufficient to impose" municipal liability under section 1983, and "simply citing to [the] plaintiff's own experiences does not demonstrate that [he] was the victim of a policy or custom that caused [him] to suffer injury." *Sledge*, 63 F.Supp.3d at 28 (alterations, internal quotation marks, and citations omitted). This is primarily because "[t]he alleged unconstitutional conduct must be pervasive enough to be so common and settled as to be considered a custom or policy." *Id.* (internal quotation marks and citation omitted).  Furthermore, unless the plaintiff "demonstrate[s] a pattern of injuries in order to establish municipal culpability and causation[,]" it could be unfair to impose municipal liability due to the lack of "notice to the municipal decisionmaker, *\*348* based on previous violations of federally protected rights, that his approach is inadequate." *Hamilton*, 852 F.Supp.2d at 151 (internal quotation marks and citation

omitted); *see also Poindexter v. D.C. Dep't of Corr.*, 891 F. Supp. 2d 117, 121–23 (D.D.C. 2012) (finding no deliberate indifference where the plaintiff failed to allege "a purposeful lack of response on the part of the District" to the risk of the deprivation of others' constitutional rights "outside of purported wrongful conduct as to him," and failed to "point to any behavior on the part of the District toward [others] that ... evidence[d] a deliberate disregard for their constitutional rights").

The bottom line is this: there is no evidence in the instant record that the District has "adopt[ed] a policy of inaction" in the face of knowledge that FEMS officials routinely retaliate against the protected speech of that Department's employees. *Warren v. District of Columbia*, 353 F.3d 36, 39 (D.C. Cir. 2004). Consequently, Ryan has also failed to establish deliberate indifference municipal liability for the purpose of sustaining his section 1983 claim.

## CONCLUSION

All of the above cases make clear that Plaintiff must prove that, at the time of his overdetention, the District maintained a policy of receiving release orders from multiple sources and that this practice was constitutionally infirm in that it presented a significant risk that individuals ordered released from Superior Court would be overdetained.

Respectfully submitted,

KARL A. RACINE
Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General, Civil Litigation Division

/s/ Michael K. Addo
MICHAEL K. ADDO
D.C. Bar No. 1008971
Chief, Civil Litigation Division, Section IV

/s/ Alicia M. Cullen
ROBERT A. DEBERARDINIS, JR.
D.C. Bar No. 335976
Assistant Attorney General
ALICIA M. CULLEN
D.C. Bar No. 1015227
Chief, Civil Litigation Division, Section III
441 Fourth Street, NW, Suite 630 South
Washington, DC 20001
Phone:  (202) 724-6642; (202) 442-9840
Fax:  (202) 741-8895; (202) 715-7721
robert.deberardinis@dc.gov; alicia.cullen@dc.gov

*Counsel for Defendant District of Columbia*